RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0031p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RAID SHABA SAKO,

*Petitioner,*

*v.*

No. 04-3426

ALBERTO GONZALES, Attorney General,

*Respondent.*

On Petition for Review of an Order
of the Board of Immigration Appeals.
No. A75 219 663.

Submitted: October 25, 2005

Decided and Filed: January 20, 2006

Before: BOGGS, Chief Judge; GIBBONS, Circuit Judge; and ROSE, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Alan M. Anzarouth, San Diego, California, for Petitioner. Ethan B. Kanter, Michael P. Lindemann, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

## OPINION

_____

BOGGS, Chief Judge. The Fifth Amendment to the Constitution guarantees due process of law to aliens in a removal proceeding. *Reno v. Flores*, 507 U.S. 292, 306 (1993). When an alien makes a claim of ineffective assistance of counsel in a removal proceeding he "carries the burden of establishing that ineffective assistance of counsel prejudiced him or denied him fundamental fairness in order to prove that he has suffered a denial of due process." *Allabani v. Gonzales*, 402 F.3d 668, 676 (6th Cir. 2005). In this case, petitioner Raid Sako does not assert prejudice because an appeal of his removal proceeding would have been successful. Rather, the only claimed prejudice is denial of an opportunity to remain in this country while awaiting the outcome of the appeal—the appeal that his attorneys failed to file. We hold that denial of this opportunity does not constitute a denial of due process. Morever, we hold that the Board of Immigration Appeals ("BIA") did not

_____

[*] The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

1

abuse its discretion in denying Sako's motion to reopen based on its finding that Sako had not shown prejudice. Accordingly, we affirm.

In this case, Sako appeals the denial of his motion to reopen removal proceedings due to ineffective assistance of counsel. The immigration judge ordered Sako removed to Iraq and the order was affirmed on administrative appeal. Subsequently, Sako moved to reopen the proceedings, alleging that two of his former counsel were ineffective in failing timely to petition for judicial review of his administrative appeal, and requesting that the matter be reopened to permit the filing of a petition for judicial review. The motion was denied because Sako failed to show prejudice, even though he complied with most of the procedural requirements for an ineffective assistance claim.

**I**

Sako is a native and citizen of Iraq, born and raised in Baghdad. On March 5, 1998, he applied for asylum under section 208 of the Immigration and Nationality Act, 8 U.S.C. § 1158. Sako claims that he suffered both religious and political persecution as a minority Chaldean Christian in Iraq under the regime of Saddam Hussein before leaving in 1992. He lived in Greece for four years and eventually entered the United States. Sako's asylum application, and his testimony before an immigration judge ("IJ") on March 12, 1998, alleged the following details.

Upon entering high school, Sako was subjected to pressure from fellow students to join the dominant Baath Party. At the same time, in Arabic language and Islamic religion classes, Sako began to feel that he was being discriminated against as a Christian. He claims that he was slapped and pulled about by the cross which he wore upon his neck by a teacher in class when he questioned an assignment to memorize certain Islamic dogma. Subsequently, he was given a failing grade in Arabic. Sako switched schools. In 1989, when he was nineteen, Sako was accused of vandalizing a classroom portrait of Saddam Hussein. Although he denied the accusation, Sako was called a "dirty Christian" and hit by six other students. He was then taken into police custody, where questioning about the incident commenced. Sako testified that he was beaten with a three-foot-long stick for about fifteen minutes and then detained at the police station in a cell-like room for two to three days before his release. He claims that he was re-arrested one week later, beaten for a few minutes and returned to the cell for about one week, when he was again released. Because of his absence from school during this time, Sako was unable to take examinations and fell one year behind in his studies.

Sako's high school performance was distinguished enough to qualify him to attend a prestigious university. However, because of his Christian identity, he was directed to attend a technology institute instead. While attending the institute, Sako testified that he participated in Bible study with three other students at the house of his friend. On one particular occasion in 1992, Sako claims all of the Bible study participants were arrested when police forced their way into the residence. The four were taken to the police station and Sako was accused and questioned about forming a Christian political party. During the interrogation, Sako claims he was beaten about the head and neck and then detained overnight in a small room with bars on the windows. The next day, Sako was blindfolded and the questioning continued. His interrogators asked Sako why he remained in the country as a Christian, since he did not belong there. Sako's testimony claims that his detention continued and three to four days later he was questioned by two men in the same room where he was hit with a heavy belt. This pattern continued, with interrogation and beating occurring every week to ten days. Sako adds that he was forced to do hard labor and to clean toilets.

At some point, Sako claims that a guard informed him that he was being detained in the "general jail" and that, if Sako had money, his escape could be bought. Sako gave the guard the address of his uncle in Baghdad who could provide the money, and in two weeks the guard informed

him that his escape was ready.  Sako testified that in April 1992, he was given a work assignment loading bricks and that while working, the same guard directed him to a door that would lead out of the prison.  Sako followed the guard's instructions, exited the prison, and entered a waiting taxi just outside the prison walls.  From there, he was driven to his uncle's house in northern Iraq where he stayed twenty to thirty days before making plans to leave the country.

After delivering this testimony, Sako was cross-examined by the counsel for the government.  He acknowledged that he had never engaged in any political activity or protest while in Iraq.  Sako admitted that he had not been denied a chance to attend university, but that he had not applied because he knew he would be rejected.  The government then questioned Sako about the Bible, specifically, regarding how long he had been studying it, the names of the gospels, and the names of the first and last books of the New Testament.  Sako replied that he had been studying the Bible for "some period of time."  As to the names of the gospels, Sako answered Luke, John, Thomas, and Peter.  He could not name the last book of the Bible and identified the first book as the Life of Jesus.  The government also asked if Sako could name a book written by the disciple Paul and, according to the IJ, Sako "struggled," but eventually identified Corinthians.  The government then questioned Sako about his escape from prison.  Sako testified that he was alone in the taxi that ferried him from prison, that the journey to the north took about six hours, and that, although there were checkpoints along the highway, they were never stopped by the soldiers who were posted at them.

The IJ's opinion assessed "the rationality, internal consistency, and inherent persuasiveness" of Sako's testimony and concluded that he was not credible.  The IJ noted an almost complete lack of corroborative evidence and found that Sako's testimony, even if true, failed to establish either past persecution or a well-founded fear of future persecution on either religious or political grounds.

Specifically regarding his credibility, the IJ found Sako's knowledge of the Bible scanty for someone who claimed to be a Bible student.  "Despite his claim of diligent study of the Bible, [Sako] was unable to answer the most fundamental questions concerning the Bible, such as, the principle [sic] gospels relating to the New Testament and the name of the last book of the Bible."  The IJ went on to note that "the Chaldean Bible is not significantly different from that of the general Christian church [in] that the gospels are that of Matthew, Mark, Luke, and John."  Further, the IJ found it significant that Sako could not identify the last book of the Bible as Revelations.

The IJ also found Sako's prison escape story "not sufficient to raise the credibility of his claim."  That Sako could exit the prison, "a well-known" facility in Baghdad, enter a waiting taxi and drive away successfully without any inquiries from guards or other authorities, the IJ found, "lacks the ring of authenticity."  The IJ also found it "implausible" that a lone young man could travel six hours in a taxi along the main roads of Iraq towards the north in 1992 without being stopped at manned checkpoints.  Further, the IJ found that Sako's treatment in class did not constitute past persecution because he had not met his burden of proving that any mistreatment was on account of his religious identity.  Rather, the IJ opined that Sako's deprivation of an opportunity for higher education was more likely attributed to his refusal to apply to university, or to perform certain required tasks while in high school.  The IJ found that any corporal punishment in high school, although it "may be condemned in the United States," did not rise to religious persecution.

Finally, regarding Sako's alleged persecution for participating in a Bible study group, the IJ doubted the basic premise of the allegation because Sako's knowledge of the Bible was so deficient. Further, the IJ found Sako's description of his detention too generic to be believed, while also noting a complete lack of corroborative evidence.  For all these reasons, the IJ concluded that Sako "has failed to establish past persecution in Iraq."  Similarly, the IJ concluded that Sako lacked a well-founded fear of persecution if he were to return to Iraq.  Although the IJ did not "doubt that in company with other ethnic and religious minorities [Sako] has and may in the future experience

discrimination in employment or in education on account of his identification with a religious minority" in Iraq, his claims of discrimination did not amount to persecution.

Before the IJ, Sako was represented by Steven C. Powell. On July 23, 1998, after the IJ ordered Sako's removal, Powell timely appealed the decision to the BIA. Some time after filing this first appeal to the BIA, Sako switched attorneys and retained the services of David Paruch to represent him in his pending appeal. In January 2001, Powell and Paruch, jointly, attempted to notify the Office of the Immigration Judge in Detroit, Michigan about the change in representation. However, in filing the required documentation with the Service, Paruch omitted a required form and thus, failed to file properly.[1] Compounding this error, Powell, Sako's original attorney, relocated his law office in September 2000 and received forwarded mail for only a limited period.

On August 26, 2002, the BIA ruled on Sako's appeal, summarily affirming the IJ and affirming the order for Sako's removal. Notice of this decision and order was sent to Powell, who no longer represented Sako, at an address where he no longer worked or received mail. Subsequently, Sako retained a new attorney.

In September 2003, through his third, current, and most recently retained attorney, Sako moved to reopen proceedings before the Board. He argued that the negligence of his prior counsel amounted to the ineffective assistance of counsel and a violation of his rights. He requested that the Board reopen the matter and re-issue its decision to enable him timely to petition for judicial review with this court. On March 1, 2004, the BIA denied the motion to reopen, finding that "[a]lthough the respondent has complied the requirements of *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988), he has not shown prejudice as required by *Matter of Assaad*, 23 I. & N. Dec. 553 (BIA 2003). Accordingly, the motion is denied."

## II

We have jurisdiction pursuant to the Immigration and Nationality Act, 8 U.S.C. § 1252(b), to review final orders of removal. Before a request for asylum can be granted, an alien bears the burden of qualifying as a refugee. *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004). An alien who can establish past persecution, or a well-founded fear of persecution upon return to the country of origin, qualifies as a refugee. *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005). "'Persecution' entails 'punishment or the infliction of suffering or harm,' but 'harassment or discrimination without more does not rise to the level of persecution.'" *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004) (citing *Mikhailevitch v. INS*, 146 F.3d 384, 389–90 (6th Cir. 1998)). Where the alien's testimony could be viewed as incredible, inconsistent, or incoherent, a fact-finder may reasonably conclude, absent corroboration, that the testimony is insufficient to meet the standard of proof required. *Pilica*, 388 F.3d at 954.

Under BIA regulations, a motion to reopen "shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (citing 8 C.F.R. § 1003.2(c)(1)). We review the denial of a motion to reopen under an abuse of discretion standard. *INS v. Abudu*, 485 U.S. 94, 107 (1988); *Allabani*, 402 F.3d at 675. A reviewing court must possess a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Balani v. INS*, 669 F.2d 1157, 1160 (6th Cir. 1982) (quoting *In re Josephson*, 218 F.2d 174, 182 (1st Cir. 1954)). "In determining whether the Board abused its discretion, this Court must decide whether the denial of [the] motion to reopen . . . was made without a rational explanation, inexplicably

---

[1] The form is identified by Sako as "EOIR-27," Executive Office for Immigration Review Form 27, Notice of Entry of Appearance as Attorney.

departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Allabani*, 402 F.3d at 675 (quoting *Balani*, 669 F.2d at 1161).

"[W]here there is a claim of ineffective assistance of counsel, we review this question of law de novo." *Allabani*, 402 F.3d at 676. "The alien carries the burden of establishing that ineffective assistance of counsel prejudiced him or denied him fundamental fairness in order to prove that he has suffered a denial of due process." *Ibid.*; *Denko v. INS*, 351 F.3d 717, 724 (6th Cir. 2003).

## III

A successful motion to reopen due to ineffective assistance of counsel before the BIA must satisfy two conditions. First, the claim must present the facts required by *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988). Briefly, the *Lozada* requirements are (1) that the motion be supported by an affidavit detailing counsel's failings, (2) that counsel be informed of the allegations, and (3) that the motion show that disciplinary charges have been filed with the appropriate authority. *Ibid.*; *Ljucovic v. Gonzales*, 144 F. App'x 500, 502 (6th Cir. 2005) (unpublished).

Second, the BIA requires that Sako "must also show that he or she was prejudiced by the actions or inactions of counsel." *See In re Assaad*, 23 I. & N. Dec. 553, 556 (BIA 2003). *Assaad* involved circumstances almost identical to those in our case. Assaad appealed the denial of a motion to reopen after a previous attorney failed timely to appeal the decision of the IJ. Assaad alleged ineffective assistance of counsel in his motion and attempted to show compliance with the requirements of *Lozada*. *Ibid.* The BIA, en banc, dismissed Assaad's appeal. *Id.* at 563. The BIA refused to overrule *Lozada*, finding that it "has given the Board a useful framework for evaluating claims of ineffective assistance of counsel and is in accord with controlling precedent in most circuits." *Id.* at 562. Instead, the BIA held that aliens must also show that the ineffective assistance of counsel led to prejudice in their case. *Id.* at 563.

Our precedents mirror those of the BIA and establish that Sako "carries the burden of establishing that ineffective assistance of counsel prejudiced him or denied him fundamental fairness in order to prove that he has suffered a denial of due process." *Huicochea-Gomez v. INS,* 237 F.3d 696, 699 (6th Cir. 2001); *see also Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005) (prejudice is necessary to establish a due process violation in an immigration hearing). The two components of this formulation, prejudice and fundamental fairness, are analogous in this specific analytical context. "Prejudice" inquires, *ex post*, whether due process was violated by evaluating whether the alien's claims could have supported a different outcome. "Fundamental fairness" examines the process afforded *ex ante*, considering whether the denial of effective counsel makes such a proceeding fundamentally unfair.

These two formulations of the test cited in *Huicochea* find their roots in this circuit in *Aguilera-Enriquez v. INS*, 516 F.2d 565, 569 (6th Cir. 1975), which similarly equates fundamental fairness with prejudice:

> [Appellee] was effectively represented by counsel before the Board, and his argument was considered upon briefing and oral argument. The lack of counsel before the Immigration Judge did not prevent full administrative consideration of his argument. Counsel could have obtained no different administrative result. "Fundamental fairness," therefore, was not abridged during the administrative proceedings, and the order of deportation is not subject to constitutional attack for a lack of due process.

*Ibid.* Supporting this passage's formulation are three citations, *Villanueva-Jurado v. INS*, 482 F.2d 886, 888 (5th Cir. 1973) ("the record in this case convincingly shows that the appointment of an

attorney would have been unavailing and hence unnecessary"), *Henriques v. INS*, 465 F.2d 119, 120–21 (2d Cir. 1972) ("counsel, even if furnished, could not have obtained any other result in the administrative proceedings. . . .   No prejudice can be said to have resulted from the absence of counsel . . . the hearing below was not invalid."), and *Sumio Madokoro v. Del Guercio*, 160 F.2d 164, 167 (9th Cir. 1947) ("Failure to have counsel, if error, like other errors, may not be prejudicial. If there be a presumption that the denial of due process is presumed prejudicial, that presumption is overcome by appellant's admissions here").

In this case, the fact that counsel failed to petition for judicial review of the findings of the BIA does not automatically result in a denial of due process.  Sako must show more.  Sako must establish that, but for the ineffective assistance of counsel, he would have been entitled to continue residing in the United States.  *Denko v. INS*, 351 F.3d 717, 724 (6th Cir. 2003);  *Huicochea-Gomez v. INS*, 237 F.3d 696, 699–700 (6th Cir. 2001);  *Ljucovic v. Gonzales*, 144 F. App'x 500, 504 (6th Cir. 2005) (unpublished);

In *Huicochea-Gomez*, the alien petitioners, husband and wife, were convinced by their attorney to report themselves to the Immigration and Naturalization Service to take advantage of a method he believed would legalize their status in this country.  237 F.3d at 697.  However, the law had recently changed, and the attorney's relied-upon program had been repealed, rendering the aliens subject to deportation where otherwise they had been unknown to the Service.  Even though the aliens would have continued a "peaceful life working and raising their children" *illegally* in the United States, we held that their attorney's error did not constitute prejudice.  *Id.* at 700.  It did not matter than the attorney's actions had *actually* impaired the factual ability of Huicocheas to remain in the United States.  Rather, their continued presence in the United States was illegal and they could not demonstrate a *right* to remain in the country.  *Ibid.*  Although the ineffective assistance of their counsel may have made their proceeding possible, it could not have prejudiced the outcome.

We again affirmed an order of removal in the face of a claim of ineffective assistance of counsel in *Denko v. INS*, 351 F.3d at 725.  In *Denko*, the alien argued that her absence at a scheduling hearing resulted in an order against her.  *Id.* at 724.  Denko argued that her attorney was ineffective because he "failed to make clear Denko's responsibility for appearing at the . . . hearing."  *Id.* at 722.  The *Denko* court found this argument unavailing:

> Denko was not entitled to relief on her alleged ineffective-assistance-of-counsel claim because she failed to show how her liberty interest was violated.  Denko is unable to show the necessary "prejudice" or "fundamental unfairness" because she cannot establish that "but for [her attorney's] legal advice, [she] would have been entitled to continue residing in the United States."  In fact, Denko merely asserts that if she had not relied on [her attorney's] allegedly confusing letter, she would have appeared at her scheduled hearing and an order [issued without her appearance] would not have been entered against her.  While this may very well be accurate, this is not equivalent to a showing that if Denko attended the hearing she would have been granted the asylum she sought.

*Id.* at 724 (citations omitted).  *Denko* and *Huicochea-Gomez* demonstrate that the key to due process analysis in these cases is the effect on the outcome of the underlying claim.

In an unpublished decision, *Ljucovic v. Gonzales*, a panel of this court denied an alien's ineffective assistance of counsel claims on facts similar to those in the case at bar.  144 F. App'x at 506.  Ljucovic alleged that her attorney's failure to notify her of the Board's decision "cost her the opportunity to appeal the decision to this court."  *Id.* at 504.  Further, she claimed that, given the chance to appeal, she could have demonstrated both past persecution and a well-founded fear of returning to her country of origin.  *Ibid.*  However, Ljucovic presented "no compelling evidence

suggesting that the IJ's decision would have been overturned on appeal to this court under a substantial evidence review and that she would have been entitled to remain in the United States." *Id.* at 505. The *Ljucovic* panel held:

> [T]he loss of a right to appeal the BIA's decision to this court and the accrual of unlawful presence do not constitute prejudice under this circuit's law. Under *Huicochea-Gomez*, Ljucovic must establish that but for [her attorney's] failure to notify her of the BIA's decision, she "would have been entitled to continue residing in the United States." While another circuit appears to allow the alien to demonstrate prejudice based upon the loss of a right to appeal, this court has adopted a more stringent standard. Ljucovic's allegations that her counsel's ineffectiveness prevented her from filing an appeal or caused her to accrue unlawful presence do not demonstrate that she would have been able to remain in the country had she received timely notification of the BIA's decision.

*Id.* at 504–05 (citations omitted). We noted, that although the Ninth Circuit has held that prejudice should be assumed where the alien is denied the opportunity to appeal, *see Dearinger ex rel. Volkova v. Reno*, 232 F.3d 1042, 1045 (9th Cir. 2000), that circuit appears to be alone in so holding. *See Dakane v. United States Attorney Gen.*, 399 F.3d 1269 (11th Cir. 2005) (holding that a *rebuttable* presumption of prejudice applies and that BIA rebuts this presumption when it notes failure of alien to demonstrate prejudice in his motion); *Hernandez v. Reno*, 238 F.3d 50, 57 (1st Cir. 2001) (disagreeing with *Dearinger*).

The motion to reopen in this case does not offer any evidence that was not available at the time of the hearing before the IJ. Nor does it present any new evidence. *See Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005). The petitioner in this case does not allege that the IJ abused her discretion, that she comitted a clear error of judgment, or that she failed to weigh any relevant factor. *See Balani v. INS*, 669 F.2d 1157, 1160 (6th Cir. 1982). The petitioner does not attempt to clear up any inconsistencies in his testimony, nor does he object to the adverse determinations of credibility made by the IJ. *See generally Yu v. Ashcroft*, 364 F.3d 700, 704 (6th Cir. 2004). Finally, Sako does not allege that the BIA or the IJ discriminated against him as a member of a particular race or group. *Allabani*, 402 F.3d at 675 (quoting *Balani*, 669 F.2d at 1161). In fact, Sako does not question any portion of the IJ's decision denying him status as a refugee and asylum in the United States. We cannot say that the IJ committed clear error or that there is not substantial evidence supporting the IJ's conclusions that Sako was not persecuted in the past and lacks a well-founded fear of future persecution, and Sako does not even raise these issues in support of his petition.

We are left with facts that cannot constitute denial of due process and therefore are not cognizable under the Fifth Amendment, irrespective of any failure of counsel. Sako's claims are like those of Ljucovic, Denko, and Huicochea-Gomez. Sako does not argue in his motion to reopen that the BIA erred in its consideration of the merits of the case. In fact, Sako's admits in his proof brief to this court that its "sole purpose" is to give him the opportunity to reside in the United States while he seeks review in the court of appeals. Sako finds prejudice in the denial of "his due process right to physically remain in the United States to pursue judicial review of the Board's decision in his case in the federal court of appeals." Basically, Sako's sole claim is that due process requires that he be allowed to remain in the United States to pursue an appeal lacking in substantive merit. We cannot agree.

Although we realize that the fact of residing in the United States, for any amount of time, is, no doubt, a valuable condition, Sako was not deprived of any *right* to do so in this case. Sako's petition is more properly recognized as a dilatory tactic, in no way demonstrating anything prejudicial that transpired due to ineffective assistance of counsel in his underlying asylum claim.

**IV**

In conclusion, we cannot say that the BIA abused its discretion in denying Sako's motion to reopen where there was no hint that his asylum claim had been prejudiced in any way. An alien's lost opportunity to appeal an adverse decision in a removal proceeding, because of ineffective assistance of counsel, cannot form the basis of a due process claim unless the appeal itself would have succeeded. Accordingly, the order of the Board of Immigration Appeals is **AFFIRMED**.