**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0727n.06
Filed: October 5, 2006

**No. 05-3953**

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ANTON M. MARKU, ROZE MARKU, ELDE MARKU, and ARETA MARKU, | ) ) ) | |
| Petitioners-Appellants, | ) ) | |
| v. | ) ) | ON PETITION FOR REVIEW FROM THE BOARD OF IMMIGRATION APPEALS |
| ALBERTO GONZALES, Attorney General of the United States | ) ) ) | |
| Respondent-Appellee. | ) ) ) | |

Before: ROGERS and GRIFFIN, Circuit Judges; HOOD, Chief District Judge.[*]

ROGERS, Circuit Judge. Anton and Roze Marku, and their children Elde and Areta, are all native Albanians who petition this court for review of denial by the Board of Immigration Appeals of their motion to reopen deportation proceedings based on a claim of ineffective assistance of counsel. Because Marku has failed to connect the failures of prior counsel to the outcome of his case, he has not established the prejudice required for a successful motion to reopen based on ineffective assistance of counsel. We deny the petition for review.

## I. Background

Anton and Roze Marku entered the United States without inspection on September 11, 1996, and their children, Elde and Areta, entered the United States on September 29, 1996. In May 1997,

_____

[*]The Honorable Joseph M. Hood, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

Anton Marku, through counsel, filed an application for asylum and withholding of removal with his wife and children as derivative applicants. In his asylum application, Marku alleged persecution based on his political opinions and membership in a particular social group.

In July 1997, the Markus received Notices to Appear. Anton and Roze Marku were charged with violating § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA) (being removable as aliens admitted without being admitted or paroled). 8 U.S.C. § 1182(a)(6)(A)(i). Elde and Areta Marku were charged with violating § 237(a)(1)(A) of the INA (being removable as aliens admitted without proper documentation at the time of entry). 8 U.S.C. § 1227(a)(1)(A). At a preliminary hearing on September 9, 1997, the Markus conceded removability, renewed their applications for asylum, and applied for withholding of removal and, in the alternative, for voluntary departure.

The merits hearing occurred on November 25, 1998, in Detroit, Michigan. Valerie Lisiecki[2] and Noel Lippman represented the Markus. At the hearing, counsel did not have a copy of Anton Marku's asylum statement and borrowed a copy from the INS attorney. It also became apparent that the immigration judge (IJ) did not have Anton Marku's supplemental asylum statement which was prepared because the statement attached to his initial application was incomplete. The IJ sustained the government's objection to consideration of the supplemental statement because the statement was not submitted to the IJ in a timely fashion. However, the IJ stated that nothing prevented Marku from testifying to what was in the supplemental statement and that the statement would be admissible in the event that the government raised allegations of recent fabrication. Finally, the IJ allowed Marku to make corrections to the statement included with his asylum application because Marku said it was incomplete. After the changes in the asylum statement were read to the IJ, Lisiecki left the hearing to attend to another client, leaving Lippman to represent the Markus at the hearing. The IJ asked Marku whether it was a problem if Lisiecki left and Marku responded that it was not.

---

[2]Petitioners' briefs refer to Lisiecki as Ms. Yaeger. At some point after the merits hearing she apparently began using her maiden name.

Following the hearing, the IJ denied Marku's application for asylum. Although the IJ found Marku to be credible, the IJ concluded that Marku had not established past persecution and, relying on the changes in the government of Albania since the Markus left and the State Department country report, also concluded that Marku had not established fear of future persecution. The IJ, relying again on the State Department report, stated that the Albanian economy in 1996 was "virtually collapsed" and that it was not difficult to believe why someone desirous of a better life would want to leave. Because Marku could not establish the lower burden of proof required for asylum claims, the IJ concluded that Marku could not establish entitlement to withholding of removal. The IJ also found Marku ineligible for voluntary departure because he was in the country for less than one year.

Marku appealed the IJ's decision to the Board of Immigration Appeals (BIA). The notice of appeal listed seven errors on the part of the IJ, including denial of Marku's application for asylum. Although Lisiecki indicated that she would file a brief, she failed to do so, and the INS moved for summary dismissal. The BIA dismissed the appeal on December 11, 2003. Rather than summarily dismissing the appeal, the BIA stated in its opinion that Marku failed to establish entitlement to asylum. The BIA agreed with the IJ that Marku's primary reasons for leaving Albania were the faltering economy and Anton Marku's implication in criminal activity.

The State of Michigan suspended Lisiecki from the practice of law on December 20, 2000, and the BIA suspended her from practicing before the agency on April 9, 2001. The BIA sent suspended attorney notices and briefing schedules to Marku in April, May, June, and July of 2003, but these were returned as undeliverable, presumably because Marku had moved and the notices were sent to his old address. Marku maintains that it was not until he went to Lisiecki's office in November 2003 that he discovered that Lisiecki had moved from the state. When Marku went to Lisiecki's office, Lippman told Marku that Lippman was handling the appeal to the BIA, but did not tell Marku about Lisiecki's suspensions. Marku states that he gave Lippman his new address at this November 2003 meeting, but the December 11, 2003 decision of the BIA was also returned as undeliverable. Marku claims that he attempted to contact Lippman a number of times in 2003 and

2004 to check the status of his case but that Lippman never responded. It was not until January 2005, when the Markus' daughters were sent notices to appear for their removal, that Marku became aware of the BIA's decision. Marku contacted another attorney, who notified him of the BIA's 2003 decision and filed with the BIA a motion to reopen.

The BIA denied the motion on July 25, 2005, ruling that the motion was untimely given that it was not filed within 90 days of the BIA's December 2003 dismissal of Marku's appeal. The BIA also held that even were the ninety-day period to be equitably tolled, Marku did not establish that reopening was warranted because he failed to establish "the requisite prejudice stemming from . . . former counsels' actions or inactions." The BIA stated that Marku failed to "allege[] specific errors in . . . prior counsels' presentation and development of the[] asylum claim before the Immigration Judge or the Board that would have affected the outcome of the[] case."

Marku timely filed a petition for review with this court.

## II. Analysis

This court reviews the BIA's denial of a motion to reopen for abuse of discretion. *Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006). When "determining whether the Board abused its discretion, this Court must decide whether the denial of [the] motion to reopen . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)). Generally, motions to reopen, especially in deportation proceedings, are disfavored, and the BIA has broad discretion to deny such motions. *INS v. Doherty*, 502 U.S. 314, 323 (1992).

The BIA did not abuse its discretion in denying the motion to reopen. Because Marku cannot show that the actions or inactions of former counsel prejudiced him, his claim of ineffective

assistance of counsel fails.[3] Marku must establish "that ineffective assistance of counsel prejudiced him or denied him fundamental fairness in order to prove that he has suffered a denial of due process." *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001). "'Prejudice' inquires, *ex post*, whether due process was violated by evaluating whether the alien's claims could have supported a different outcome. 'Fundamental fairness' examines the process afforded *ex ante*, considering whether the denial of effective counsel makes such a proceeding fundamentally unfair." *Sako*, 434 F.3d at 864. Prejudice in this context requires that Marku establish that he is entitled to the underlying relief requested. *Id.* at 865; *Ljucovic v. Gonzales*, 144 Fed. Appx. 500, 503 (6th Cir. 2005) (unpublished). Specifically, he must show that, but for the errors made by prior counsel, he would be entitled to remain in the United States. *Sako*, 434 F.3d at 864.

The specific complaints that form the basis for the ineffective assistance of counsel claim are: (1) that counsel came to the merits hearing unprepared because they did not have a copy of Marku's asylum application and had to share the copy brought by the INS attorney; (2) that Lisiecki's office incorrectly translated Anton Marku's initial asylum statement; (3) that Lisiecki failed to file Anton Marku's supplemental asylum statement; (4) that counsel failed to keep Marku informed of the status of the appeal of the IJ's decision; (5) that counsel failed to inform the INS of Marku's new mailing address; (6) that counsel failed to inform Marku of the BIA's decision; and (7) that Lisiecki failed to file a brief with the BIA in Marku's appeal of the IJ's decision.

Marku alleges in his brief that prior counsel's deficient performance prejudiced him in the following ways: (1) Marku lost the right to a full and fair administrative consideration of his asylum

---

[3]Marku has met the procedural requirements for an ineffective assistance of counsel claim as laid out in *In re Lozada*, 19 I. & N. Dec. 637 (B.I.A. 1998). *Lozada*'s requirements are (1) that a motion to reopen based on ineffective assistance of counsel be supported by an affidavit detailing counsel's failings; (2) that counsel be informed of the allegations; and (3) that the motion shows that disciplinary charges have been filed with the appropriate authority. 19 I. & N. Dec. at 639; *Sako*, 434 F.3d at 863. A review of the record shows that Marku met these requirements; the BIA so stated and the government does not dispute Marku's compliance with the *Lozada* requirements.

application; (2) Marku lost the opportunity to pursue a humanitarian asylum claim; (3) Marku lost the opportunity to seek judicial review of the BIA's decision; (4) the Markus became subject to an administratively final order of removal; and (5) the Markus are inadmissible for ten years.

In its denial of Marku's motion to reopen, the BIA noted that Marku failed to "allege[] specific errors in the prior counsels' presentation and development of the[] asylum claim before the Immigration Judge or the Board that would have affected the outcome of the[] case." Marku's brief to this court also fails to specify how the alleged errors of prior counsel prejudiced him. Although his brief offers a litany of errors made by prior counsel and associated harms, it fails to construct any arguments with the relevant prejudice standard in mind and Marku has not shown that but for the errors committed, he would be entitled to remain in the United States.

## A.  Failure to file a brief

Marku claims that prior counsel's failure to file a brief in the appeal to the BIA prejudiced him because he was unable to demonstrate eligibility for asylum and because he was unable to pursue a claim for humanitarian asylum based on "other serious harm" under 8 C.F.R. § 1208.13(b)(1)(iii)(B). The government maintains that this court lacks jurisdiction to consider Marku's claim regarding humanitarian asylum because it was not raised before the BIA. This court does not review claims that were not presented to the BIA. *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004). The only allegation in the motion to reopen that can be construed as addressing the failure to file a brief is that prior counsel "did not diligently pursue [the Markus'] applications." However, Marku raised the issue in his Second Emergency Motion for Immediate Stay of Removal, which was filed on May 26, 2005, approximately two months before the BIA denied the motion to reopen. In its denial of the motion to reopen, the BIA stated that the notice of appeal included a detailed attachment providing the reasons for the appeal to the BIA and that these reasons were considered by the BIA in the original appeal. This statement by the BIA supports Marku's contention that this court has jurisdiction over the claim regarding the failure to file a brief because it is apparent that the BIA considered this claim of error by prior counsel and rejected it. Thus, this court has jurisdiction to consider the issue.

Regarding the claim of prejudice stemming from the loss of an opportunity to demonstrate his eligibility for asylum, Marku cannot establish that the failure to file a brief in the appeal of the IJ's decision to the BIA resulted in prejudice. Although the government moved for summary dismissal for failure to file a brief, the BIA considered Marku's grounds for appeal and agreed with the IJ's determinations on the merits, and Marku has not established that the outcome of the appeal to the BIA would have been different had a brief been filed. *See Ba v. Gonzales*, No. 04-3759, 2006 U.S. App. LEXIS 13694, at *3 (6th Cir. May 31, 2006) (unpublished). Marku has not provided this court with any argument supporting his contention that he would have prevailed in his BIA appeal had a brief been filed. His brief recites the substance of his testimony at the merits hearing and states that the IJ erred but otherwise offers no illustration of how a brief would have altered the outcome of his appeal. *See Dokic v. INS*, No. 92-3592, 1993 U.S. App. LEXIS 19027, at *10 (6th Cir. July 15, 1993) (unpublished) (rejecting a claim of prejudice based on failure to file a brief where the failure "did not prevent the Board from specifically addressing and rejecting each basis for the appeal"). Because of this failure to link the error in failing to file a brief with the BIA with the required prejudice, Marku has not established that this error prejudiced him.

Similarly, because Marku cannot establish prejudice stemming from the failure to file a brief raising the issue of humanitarian asylum based on "other serious harm" under 8 C.F.R. § 1208.13(b)(1)(iii)(B), this claim fails. Marku has not alleged that, but for his previous attorneys' failure to file a brief, he would have been *granted* humanitarian asylum. In the Second Emergency Motion, the only argument Marku presented to the BIA in support of his claim of eligibility for asylum based on other serious harm was that "Albania is a violent and dangerous place where crime, corruption, and the settling of old scores . . . occur unabated and often with government acquiescence," and that Marku was prevented from presenting this claim. However, such general statements regarding conditions in Albania that impact all Albanians are not sufficient to show what specific harms may be faced by the Markus upon their return to Albania. *See Pergega-Gjonaj v. Gonzales*, 128 Fed. Appx. 507, 512-13 (6th Cir. 2005) (unpublished) (holding that the IJ and BIA

properly rejected an asylum claim based on other serious harm where the petitioner offered only general evidence that life in Kosovo was difficult and that there were a lot of problems there).

Because Marku cannot establish that he and his family would have been entitled to remain in the United States had prior counsel filed a brief in the appeal to the BIA, he cannot establish the prejudice necessary to sustain a claim of ineffective assistance of counsel. Prior counsel failed to file a brief with the BIA and Marku no doubt lost an opportunity to present his appeal to the BIA in a more forceful and articulate way, but he has not alleged or provided support for a contention that he would have been successful. Thus, this claim must fail.

## B. The loss of the right to appeal the BIA's decision

Because he cannot show that an appeal to this court would have been successful, Marku cannot establish that he was prejudiced when, because of his previous attorneys' failure to notify the BIA of Marku's new address and their failure to notify him of the decision of the BIA, he was foreclosed from appealing the decision of the BIA to this court. *Ljucovic*, 144 Fed. Appx. at 504-05 ("[T]he loss of a right to appeal the BIA's decision to this court . . . do[es] not constitute prejudice under this circuit's law. . . . [The petitioner] must establish that but for [counsel's] failure to notify her of the BIA's decision, she 'would have been entitled to continue residing in the United States.'" (quoting *Huicochea-Gomez*, 237 F.3d at 699-700)). Marku's brief devotes one paragraph to this claim of prejudice and fails to establish that he would have been successful on appeal. The IJ concluded that Marku had not established past persecution, that the Markus left when they did because of a criminal incident and the faltering Albanian economy, and that changed circumstances in Albania, specifically changes in the government, meant that the people targeting Anton Marku and his family were no longer in power, thus negating any presumption of well-founded fear of future persecution. The BIA agreed with the IJ's determination in the initial appeal. Marku has not introduced any evidence or made any argument suggesting how or why the outcome of his case would have been different after a substantial evidence review. *See id.* at 505. Marku merely restates the

substance of his asylum claim and provides an overview of asylum law. Because the loss of the right to appeal, standing alone, is insufficient to show prejudice, Marku's claim based on this loss fails.

### C. The accrual of unlawful presence and the ten-year ban on readmission

Marku claims that his attorneys' failure to notify him of the BIA's decision prejudiced him because he and his family accrued of more than one year of unlawful presence, triggering a ten-year ban on readmission. The government maintains that Marku did not exhaust this claim and that this court lacks jurisdiction. Marku's motion to reopen only mentions the accrual of unlawful presence and does not mention the ten-year ban on readmission. However, the Second Emergency Motion discusses the ten-year ban on readmission triggered by the Markus' accrual of more than one year of unlawful presence. As discussed previously, the BIA considered the substance of this issue when denying the motion to reopen and concluded that Marku failed to demonstrate the requisite prejudice—that the outcome of his case would have been different. Because this explanation disposes of the ineffective assistance of counsel argument and because the BIA apparently considered the Second Emergency Motion and the arguments contained therein, it appears that Marku exhausted his claim regarding the ten-year ban on reentry.

However, this claim fails because Marku cannot establish the requisite prejudice. Marku claims that his previous attorneys' failure to notify the BIA of his new address and to notify him of the BIA's decision resulted in more than one year of unlawful presence in the country, triggering a ten-year ban on readmission. However, the prejudice inquiry in the context of ineffective assistance of counsel focuses on the effect of any errors on Marku's right to remain in the United States and on the fundamental fairness of the procedures. Under such a prejudice standard, Marku cannot establish that the impact of his previous attorneys' errors—the accrual of unlawful presence and a ten-year ban on readmission—is sufficient. Although it is no doubt prejudice in the general sense of the word, it is not sufficient to support a claim of ineffective assistance of counsel in the context of immigration proceedings. *See, e.g., Ljucovic*, 144 Fed. Appx. at 505 ("[T]he . . . accrual of unlawful presence do[es] not constitute prejudice under this circuit's law. . . . [The petitioner] must establish that but

for [counsel's] failure to notify her of the BIA's decision, she 'would have been entitled to continue residing in the United States.'" (quoting *Huicochea-Gomez*, 237 F.3d at 699-700)); *Miculi v. Ashcroft*, 96 Fed. Appx. 338, 340 (6th Cir. 2004) (unpublished) (rejecting a claim of prejudice where petitioner accumulated unlawful presence and was subject to penalties on her ability to return).

### D. Errors committed at the merits hearing

Finally, Marku cannot establish that any of the enumerated errors committed by prior counsel at the merits hearing deprived him of a full and fair administrative determination of his asylum application. He has not shown how these errors had an impact on the outcome of his case and thus he cannot show prejudice. He does not point to a failure to introduce or develop evidence at the merits hearing but merely states that the IJ erred as a matter of law in denying his asylum application and that if his attorneys had been effective, he would have established that he suffered past persecution and had a well-founded fear of future persecution. Because he has not articulated how the errors committed by prior counsel at the merits hearing prevented the Markus from receiving a full and fair hearing, he cannot establish that his attorneys' performance, sloppy though it may have been, prejudiced him in the outcome of the merits hearing.

### III. Conclusion

Although prior counsel in this case made errors, were unprofessional in their handling of the case, and failed to take important steps to protect their clients, failures which have harmed the Markus, there is no showing of the requisite prejudice. Thus, the BIA did not abuse its discretion in denying Marku's motion to reopen. For the foregoing reasons, the petition for review is denied.