NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0007n.06

No. 14-3926

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 04, 2018
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| HARRISON SALINAS TUDTUD; CAROL SIBI TUDTUD, | ) ) ) |
| Petitioners, | ) ON PETITION FOR REVIEW |
| | ) FROM THE UNITED STATES |
| v. | ) BOARD OF IMMIGRATION |
| | ) APPEALS |
| JEFFERSON B. SESSIONS, III, Attorney General; DEPARTMENT OF HOMELAND SECURITY, | ) ) ) |
| | ) |
| Respondents. | ) |

BEFORE: SUHRHEINRICH, GRIFFIN, and THAPAR, Circuit Judges.

PER CURIAM. Harrison Salinas Tudtud and Carol Sibi Tudtud, husband and wife, petition this court for review of an order of the Board of Immigration Appeals (BIA) denying their motion to reopen their removal proceedings based on ineffective assistance of counsel. As set forth below, we deny the petition for review.

The Tudtuds, natives and citizens of the Philippines, last entered the United States in 2001 with B-2 tourist visas. In 2009, the Department of Homeland Security (DHS) served the Tudtuds with a notice to appear in removal proceedings, charging them with removability as nonimmigrants who remained in the United States for a time longer than permitted. *See* 8 U.S.C. § 1227(a)(1)(B). Appearing before an immigration judge (IJ), the Tudtuds conceded removability as charged and stated their intent to seek cancellation of removal on the basis that their removal would result in exceptional and extremely unusual hardship to their United States

citizen son. *See* 8 U.S.C. § 1229b(b)(1)(D). When the IJ did not receive the Tudtuds' cancellation applications by the stated deadline, the IJ deemed their applications abandoned and set a deadline to inform the immigration court if they wished to seek voluntary departure. Upon receiving no response, the IJ found that the Tudtuds had elected not to apply for voluntary departure and ordered that they be removed to the Philippines.

The Tudtuds filed a motion to reconsider the IJ's removal order and attached a motion to reopen their removal proceedings and accept their cancellation applications, asserting that they had mistakenly sent their applications to the U.S. Citizenship and Immigration Services rather than the immigration court. The IJ denied the motion to reconsider, and the Tudtuds appealed. The BIA sustained their appeal, concluding that reopening was warranted, and remanded the matter to provide the Tudtuds an opportunity to have their cancellation applications adjudicated in a merits hearing.

Upon remand, the IJ conducted a merits hearing on the Tudtuds' cancellation applications. The Tudtuds presented the testimony of a psychologist who had evaluated their son as well as their own testimony. Near the end of the hearing, the DHS attorney made an offer to agree to pre-hearing voluntary departure and allow the Tudtuds to remain in the United States through the end of the school year. Following up on that offer, the IJ pointed out that the Tudtuds were not eligible for post-hearing voluntary departure because their passports had expired. The IJ went on to state that the Tudtuds had not demonstrated exceptional and extremely unusual hardship to their son, that the IJ was going to deny their cancellation applications, that they would have the opportunity to appeal the denial to the BIA and then to this court, and that "you'd probably be just exactly where you are today, end up getting deported back to the Philippines." The IJ then addressed pre-hearing voluntary departure, which was unavailable after their hearing absent the DHS's agreement. The IJ advised the Tudtuds that, to

obtain pre-hearing voluntary departure, they were required to (1) concede removability as charged, which they had already done; (2) withdraw their cancellation applications, which they were "going to lose anyway"; and (3) waive their right to appeal. After consulting with counsel, the Tudtuds accepted the DHS's offer and withdrew their cancellation applications. The IJ subsequently granted the Tudtuds voluntary departure, allowing them to remain in the United States through the end of the school year.

During the discussion of voluntary departure at the hearing, the IJ and the DHS attorney indicated that, if the Tudtuds accepted voluntary departure, they could apply for a waiver of their unlawful presence in the United States. An alien who has been unlawfully present in the United States for more than a year is barred from seeking admission within ten years of the alien's departure or removal. 8 U.S.C. § 1182(a)(9)(B)(i)(II). The Attorney General may waive inadmissibility for an alien "who is the spouse or son or daughter of a United States citizen" if "the refusal of admission to such immigrant alien would result in extreme hardship to the citizen . . . spouse or parent of such alien." *Id.* § 1182(a)(9)(B)(v).

Three weeks after the hearing, the Tudtuds filed a motion to reopen their removal proceedings, asserting that they had agreed to withdraw their cancellation applications in reliance on the availability of a waiver of their unlawful presence in the United States and had since learned that no waiver was available because their son is not a qualifying relative under section 1182(a)(9)(B)(v). Denying the motion to reopen, the IJ stated: "Despite [the Tudtuds'] claim to the contrary, no promises or statements were made that would suggest when, or if ever, they could return to the United States. In fact, the Court stated that 'nothing in life is guaranteed' and that 'immigration law frequently changes.'" On appeal, the BIA determined that the record did not support the Tudtuds' assertion that they withdrew their cancellation applications in reliance on the IJ's and DHS attorney's statements about a waiver of their unlawful presence, noting that

the IJ stated that the Tudtuds could apply for a waiver but stressed that the outcome was not guaranteed. Accordingly, the BIA dismissed the Tudtuds' appeal.

Through new counsel, the Tudtuds filed a motion to reopen their removal proceedings before the BIA based on ineffective assistance of counsel. The Tudtuds asserted that their prior counsel erroneously advised them that they would be eligible for a waiver of their unlawful presence and recommended that they withdraw their cancellation applications, denying them the right to a full adjudication of their applications and the right to appeal a denial of those applications. The BIA denied the motion to reopen on the basis that the Tudtuds failed to establish that adjudication of their claims would have led to a different outcome. If the Tudtuds had not withdrawn their cancellation applications, the BIA pointed out, the IJ would have denied relief. According to the BIA, nothing indicated that an appeal could have succeeded, given that the hardships to the Tudtuds' son "(including economic detriment, anxiety, and adverse country conditions) are real but common hardships" and that the Tudtuds had not shown "exceptional and extremely unusual hardship." The BIA concluded that the Tudtuds failed to establish that they would have been entitled to remain in the United States but for the ineffective assistance of counsel.

This timely petition for review followed. We review the BIA's denial of a motion to reopen for abuse of discretion. *Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006). Where, as here, "there is a claim of ineffective assistance of counsel, we review this question of law de novo." *Allabani v. Gonzales*, 402 F.3d 668, 676 (6th Cir. 2005).

This court has held that Fifth Amendment guarantees of due process extend to aliens in removal proceedings and that ineffective assistance of counsel may violate an alien's due-process rights. *Hamid v. Ashcroft*, 336 F.3d 465, 468 (6th Cir. 2003). "The alien carries the burden of establishing that ineffective assistance of counsel prejudiced him or denied him

fundamental fairness in order to prove that he has suffered a denial of due process." *Allabani*,

402 F.3d at 676. This court has explained:

> The two components of this formulation, prejudice and fundamental fairness, are analogous in this specific analytical context. "Prejudice" inquires, *ex post*, whether due process was violated by evaluating whether the alien's claims could have supported a different outcome. "Fundamental fairness" examines the process afforded *ex ante*, considering whether the denial of effective counsel makes such a proceeding fundamentally unfair.

*Sako*, 434 F.3d at 863-64.

With respect to prejudice, the Tudtuds argue that the BIA abused its discretion by relying on the "hyperbolic statement" of the IJ that they "haven't come close" to demonstrating exceptional and extremely unusual hardship to their son. Although the BIA noted the IJ's statement in summarizing the background of the case, the BIA's decision reflects its review of the record in reaching the conclusion that the Tudtuds failed to establish that adjudication of their cancellation applications would have led to a different outcome. The BIA independently determined that the "hardships to the qualifying relative put forward by the [Tudtuds] (including economic detriment, anxiety, and adverse country conditions) are real but common hardships in removal cases" and that the Tudtuds had not shown "exceptional and extremely unusual hardship." *See In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 65 (B.I.A. 2001) (requiring "hardship that is substantially different from, or beyond, that which would normally be expected from the deportation of an alien with close family members here"). The BIA's decision does not support the Tudtuds' assertion that the BIA relied on the IJ's "sales speech."

The Tudtuds also contend that the BIA applied *Sako* too narrowly by only inquiring into whether there was "ex post" prejudice and failing to make the companion inquiry of whether there was "ex ante" prejudice in the form of a fundamentally unfair hearing. In support of this argument, the Tudtuds shift their focus from counsel to the IJ, asserting that the IJ's statements

about the availability of a waiver of their unlawful presence in the United States resulted in a fundamentally unfair hearing. The IJ's statements were the subject of the Tudtuds' prior motion to reopen. In upholding the denial of that motion, the BIA pointed out that the IJ stated that the Tudtuds could apply for a waiver but stressed that the outcome was not guaranteed. Before this court, the Tudtuds rely on the IJ's statement that "there's no doubt" that they could meet the "extreme hardship" standard for a waiver of their unlawful presence. But the IJ made this statement only *after* the Tudtuds consulted with counsel and announced their decision to accept voluntary departure. So the statement could not have affected their decision to accept voluntary departure. Moreover, the IJ followed up this statement with "nothing in life is guaranteed" and "immigration law changes frequently." The Tudtuds have failed to demonstrate that they were denied a fundamentally fair hearing.

The BIA did not abuse its discretion in denying the Tudtuds' motion to reopen given their failure to establish that counsel's ineffectiveness prejudiced them or denied them fundamental fairness. To the extent that the Tudtuds ask the government to mediate their case and agree to administrative closure for three years until their son is old enough to sponsor their adjustment of status, such a request should be directed to the DHS. *See Hussaini v. Lynch*, 644 F. App'x 403, 409 (6th Cir.), *cert. denied*, 137 S. Ct. 85 (2016).

For these reasons, we **DENY** the petition for review.