**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0549n.06

No. 17-4149

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

MIREYA BRAVO ESCOBAR; BENIGNA          )
ESCOBAR  SANCHEZ;  ALEJANDRA           )
CARDENAS  BRAVO;  MARIA  DEL           )
CARMEN HERNANDEZ BRAVO; JOSE           )
SANTOS      HERNANDEZ      BRAVO;      )
MARIA  GUADALUPE  HERNANDEZ            )
BRAVO,                                 )
                         **Petitioners,**   )
                                       )
              **v.**                       )
                                       )
JEFFERSON B. SESSIONS, III, Attorney   )     **ON  PETITION  FROM  A  FINAL
General,                               )     ORDER  OF  THE  BOARD  OF
                                       )     IMMIGRATION APPEALS**
                         **Respondent.**   )

```
┌─────────────────────────┐
│                         │
│         FILED           │
│      Nov 01, 2018       │
│  DEBORAH S. HUNT, Clerk │
│                         │
└─────────────────────────┘
```

OPINION

**BEFORE: NORRIS, DONALD, and BUSH, Circuit Judges.**

**PER CURIAM.** Petitioners, Mexican citizens Mireya Bravo Escobar ("Bravo") and her

mother, Benigna Escobar Sanchez ("Escobar"), each filed applications for asylum, withholding of

removal, and for protection under the Convention Against Torture ("CAT"). Their applications,

along with the derivative applications filed by Bravo on behalf of four minor children, were

consolidated below. After a hearing, an immigration judge denied relief. Petitioners elected not to

seek review of this decision with the Board of Immigration Appeals ("the Board"). Instead they

filed a motion with the immigration judge to reopen their removal proceedings based upon their

former attorneys' ineffective assistance. The immigration judge denied the motion to reopen; that

decision was unsuccessfully appealed to the Board. Petitioners now seek review in this court.

**I.**

Petitioners arrived in the United States on March 5, 2015, without the required documentation. They were served with notices to appear and subsequently conceded that they were subject to removal. They appeared for a merits hearing on September 26, 2016.

Petitioners both testified that they fled from Mexico because of their connection to former Guerrero State police officer Fortino Bravo Teran, who is Bravo's father and Escobar's husband. At the hearing, counsel for petitioners framed his clients' claim to the immigration judge as based upon their status as members of a "[p]olitical group imputed by their familial affiliation with anti-cartel activities."

Bravo testified first and explained that she came to the United States with her children to escape from the "La Familia" cartel, which was "upset at my family" because her father was a police officer. The cartel had kidnapped him in December 2014 and held him for a ransom of 10,000 pesos. He was released after three days when the ransom was paid. He left the police force shortly thereafter and was hiding in Mexico at the time of Bravo's testimony. Petitioners submitted a letter from him as part of their application. While Fortino states in the letter that he continues to hide for fear of being kidnapped, nowhere does he mention serving as a police officer.

When asked about the nature of the violence directed at her family, Bravo responded, "They arrived at my house asking for me to feed 50 people. And they also asked me for money." She recalled that ten to fifteen armed cartel members began coming to her house at the beginning of 2015. They threatened that they would take one of her children if she did not give them the money they requested.

Not only did they kidnap her father, they also murdered her uncle, Moises Escobar Sanchez, on June 10, 2015. According to Bravo, her uncle had been an unwilling member of the

2

cartel who guarded kidnapping victims, including her father. Bravo believes that her uncle was murdered because of his close relationship to her father. However, he also sought to leave the cartel. By the time of his murder, petitioners had arrived in the United States.

Bravo told the immigration judge that the men from the cartel came to her house daily from January to early March of 2015. She conceded that neither she nor her mother had contacted the police because they were "accomplices" of the cartel who would be of no help. On cross-examination, Bravo repeated that, to her knowledge, her "father was the only person in the entire police department not involved with the cartel."

Escobar essentially repeated Bravo's testimony: the cartels targeted her husband because he was a police officer; they kidnapped him and killed her brother; in contrast to his colleagues, her husband was not corrupt. However, Escobar recalled the men coming to her house to ask for food only twice. She also contradicted Bravo by testifying that neither she nor her daughter gave the men food.

### The Immigration Judge's Decision

In his oral decision, the immigration judge summarized the evidence in these terms:

> [T]he background documents taken as a whole do not reflect that the Government of Mexico is unable or unwilling to control the criminal organizations in that case, specifically, the cartels. . . .

> [The letter from Bravo's father] does not even mention the fact that he was a police officer at any time anywhere in Mexico. The Court finds it unsettling that such an important fact would be left out of the one letter received from the father.

> [T]he uncontradicted evidence in this case, by all witnesses, indicates that none of these events at any time were ever reported to the police in Guerrero state or anywhere in Mexico.

The immigration judge also noted that the number of times Bravo and Escobar testified that they were asked for food and money varied. Despite that discrepancy, the immigration judge stated that

3

"the Court will find the credibility of these witnesses to be marginal. What is required in this case is corroboration of the claim, and that has not been done in this case."

Due to the paucity of corroborating evidence, the immigration judge rejected each of petitioners' three grounds for relief. With respect to asylum, he concluded that they had not experienced harm that rose to the level of persecution on the basis of a protected ground. For instance, even if one credited petitioners' account of Fortino's kidnapping, the testimony supports a conclusion that the family was the target of economic extortion rather than persecution based upon Fortino's service as a policeman. The immigration judge concluded that the asylum applications lacked merit:

> [B]ased upon the evidence in this record, I do find that even if the respondent had presented a valid particular social group and shown that the Government of Mexico was unable or unwilling to control these private actors, the respondent has not corroborated this claim by reasonable and available evidence.
>
> Regarding internal relocation, I do not find the respondent has met her burden of showing that it would [be] neither possible nor reasonable to relocate somewhere within the country of Mexico, which is certainly a large country.
>
> In the end, I do find this to be economic targeting of the respondents by private actors or criminal gangs, and the Court believes the Sixth Circuit has ruled in *Sanchez-Robles* that these types of articulated particular social groups are indeed rejected.

The Immigration Judge went on to summarily deny petitioners' requests for withholding of removal and protection under the CAT.

Motion to Reopen

Rather than seek review of this decision by the Board, new counsel for petitioners filed a motion to reopen the proceedings based upon ineffective assistance of prior counsel. Ironically, current counsel, Melissa Anderson, served as prior counsel, in the initial stages of the applications for asylum. At that time, she was a member of the Velez Immigration Firm. However, she parted

ways with that firm while petitioners' applications for relief were still being developed and another

attorney from the firm represented them at the hearing already discussed.

Current counsel resumed her representation after the adverse decision by the immigration

judge. The motion to reopen essentially asserts that prior counsel should have done a better job

mustering corroborative evidence and preparing his clients to testify.

<u>The Immigration Judge's Decision (Motion to Reopen)</u>

After finding the motion to reopen to be timely, the immigration judge rejected it in these

terms:

> Motions to reopen based upon ineffective assistance of counsel require: (1) a supporting affidavit detailing the agreement Respondent entered into with counsel, (2) counsel be informed of the allegations against him, (3) a complaint be filed with the appropriate disciplinary authorities with respect to any violation of counsel's ethical responsibilities, and (4) counsel's response if any. *Matter of Lozada*, 19 I&N Dec. 637, 639 (BIA 1988). Furthermore, the respondent must establish that s/he was prejudiced by the actions or inactions of counsel.

> Respondents' Motion to Reopen complies with all of the procedural requirements for sustaining an ineffective assistance of counsel claim. . . .

> Respondents, however, have failed to establish that they were prejudiced by the actions or inactions of their former counsel. . . .

> Even if Respondents had presented additional corroborating evidence at their merits hearing relating to their husband/father/grandfather, the Court still would have denied their asylum claim. In its oral decision, the Court finds Respondents marginally credible, despite significant discrepancies between lead Respondent and her mother's testimony, but ultimately concludes that Respondents failed to adequately corroborate their claim. However, the Court's analysis of Respondents' case did not stop there. The Court went on to explain that even if Respondents provided sufficient corroboration, Respondents could not carry their burden to establish past persecution for three reasons. First, the harm that lead Respondent suffered, having to feed cartel members for 90 days and paying ransom for her father in the form of 10,000 pesos, does not rise to the level of persecution contemplated by the INA. Lead Respondent's mother testified that the cartels approached her on two occasions and that she never had to feed any cartel members or pay ransom money. Again, these harms do not reach the threshold of persecution. Second, Respondents did not demonstrate that the government of Mexico was unable and unwilling to control the acts of the perpetrators in this case, considering

5

Respondents never reported the father's kidnapping to the police, and the country conditions evidence makes it clear there is basically an ongoing state of war between the gangs and the government of Mexico. Third, Respondents were unable to meet the nexus requirement for past persecution. Respondents asserted lead Respondent's father was kidnapped, beaten, and released after a 10,000 pesos ransom was paid because he was a former police officer. However, the fact that lead Respondent's father was released after ransom was paid on his behalf clearly indicates that he was not targeted as a former police officer, but instead targeted for economic extortion. *See Sanchez-Robles v. Lynch*, 808 F.3d 688, 692 (6th Cir. 2015) (finding criminal exploitation motivated by perceived wealth is not a cognizable social group under the INA). Finally, the Court found that Respondents failed to demonstrate a well-founded fear of future persecution by the government of Mexico, or by private actors the government is unable or unwilling to control.

The Board's Decision

The Board adopted the reasoning of the immigration judge and dismissed the appeal.

**II.**

The Attorney General retains broad discretion to grant or deny motions to reopen immigration proceedings. *I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992); *Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006) (applying abuse of discretion standard). Such motions are generally disfavored. *Doherty*, 502 U.S. at 323. The Board may deny a motion to reopen on any of three independent grounds, which include "failure to introduce previously unavailable, material evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought." *Id.* (citing *I.N.S v. Abudu*, 485 U.S. 94, 104-05 (1988)).

"[W]here there is a claim of ineffective assistance of counsel, we review this question of law de novo." *Sako*, 434 F.3d at 863 (quoting *Allabani v. Gonzales*, 402 F.3d 668, 676 (6th Cir. 2005)). A successful motion to reopen based upon ineffective assistance of counsel must meet two requirements: first, it must satisfy the requirements set out in *Matter of Lozada*, *supra*; second, petitioners must show that they were "prejudiced by the actions or inactions of counsel." *Id.*

(quoting *In re Assad*, 23 I.&N. Dec. 553, 556 (BIA 2003)). In this case, petitioners satisfied the requirements of *Lozada*; only prejudice is at issue. The movant carries the burden of establishing that ineffective assistance of counsel resulted in prejudice. *Id.*

According to a complaint form signed by Bravo and filed with the Tennessee Supreme Court's Board of Professional Responsibility, she hired Rafael Velez and his law firm in April 2015. Her case was developed by several junior members of the law firm, including her current attorney, Ms. Anderson. After an initial interview, Bravo did not see Mr. Velez again until the hearing held on September 26, 2016. Although he attended the hearing, Mr. Velez did not participate. Instead a young attorney, William Tippens, handled it. According to Bravo, Mr. Tippens acknowledged that it was his first hearing.

Current counsel left the firm in July 2016 but offered to continue to assist with the cases of existing clients. That offer was declined and, in her view, petitioners were poorly served by the Velez firm, which did not adequately prepare its clients for the September hearing. A sworn statement submitted by Bravo details petitioners' complaints: failure by her newly assigned attorney, John Schlicher, to remain in contact; learning only two weeks before the hearing that petitioners needed to obtain additional evidence; and, being assigned another of the firm's attorneys (Tippens) at the last minute. In Bravo's opinion, "we lost, or at least had no chance of winning due to how Mr. Velez did not oversee the attorneys and did not make sure that we were properly prepared." As a result, she hired Ms. Anderson "as she at least always kept us informed about our case."

Petitioners point to inconsistencies in their asylum applications that undermined their claims. These appear to be clerical errors, which a competent attorney should have caught. For instance, Bravo's application states that armed cartel members came to her house in December

2015; yet on the next page she states that she left Mexico on March 2, 2015. In a similar vein, petitioners Bravo and Escobar each swore affidavits in December 2015. Bravo stated that her Uncle Moises worked for the cartel; Escobar swore that he did not. As petitioners see it, because the Velez Firm did not diligently review the facts and statements of the case, there was a lack of corroboration at trial.

One thing is clear from the administrative record: petitioners did not receive stellar representation below. However, petitioners must still show that they were prejudiced by sub-standard representation. As the immigration judge explained, and the Board affirmed, they have not. First, petitioners have failed to establish that they were subject to past persecution. While the privations that they experienced, such as being forced to feed cartel members, are regrettable and not to be condoned, they do not rise to the level of persecution contemplated by the Immigration and Nationality Act. Board Dec. at 2 (citing *Mohammed v. Keisler*, 507 F.3d 369, 371-72 (6th Cir. 2007)) Second, petitioners have not shown that the government of Mexico either participated in, or was unwilling to control past persecution. *Id.* at 2-3 (citing *Khalili v. Holder*, 557 F.3d 429, 436 (6th Cir. 2009). And, third, petitioners have not shown that they could not relocate safely within Mexico, which undercuts their claim of prejudice. *Id.* at 3. For these reasons, petitioners' claim for relief based upon ineffective assistance of counsel fails.

### III.

The petition for review is **DENIED**.