NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0562n.06
Filed: August 4, 2006

No. 05-3594

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| BO WANG, | ) |
| | ) |
| **Petitioner-Appellant,** | ) |
| | ) **ON PETITION** FOR REVIEW OF AN |
| v. | ) ORDER OF THE BOARD OF |
| | ) IMMIGRATION APPEALS |
| ALBERTO GONZALES, | ) |
| | ) |
| **Respondent-Appellee.** | )  **O P I N I O N** |
| | ) |

Before: KEITH and BATCHELDER, Circuit Judges; and ALDRICH, District Judge.[*]

**ANN ALDRICH, District Judge.** Appellant Bo Wang ("Wang") appeals an order of the

Board of Immigration Appeals ("BIA") affirming the denial of his application for asylum by an

Immigration Judge ("IJ"), pursuant to 8 U.S.C. § 1252(a). Since the BIA adopted the IJ's reasoning

in a *per curiam* opinion, this court's review centers on the IJ's decision. That decision primarily

involves the question of whether a visa application received by the U.S. Consulate in Shenyang,

China, was submitted by Wang and if so, whether that submission undermines Wang's credibility

to the point that substantial evidence supported the IJ's denial of asylum. For the following reasons,

we regrettably affirm the BIA's denial of Wang's asylum petition.

---

[*]The Honorable Ann Aldrich, United States District Judge for the Northern District of
Ohio, sitting by designation.

**I.**

Wang recounted the basic details of his story in the written statement attached to his application for asylum (Joint Appendix ("J.A.") 10-13). Wang supplemented his statement with other documents in the record, as well as with his testimony at the hearing before the IJ. Wang was born in Shenyang, Liaoning in the People's Republic of China on June 22, 1964, and lived there until coming to the United States in 2001. Wang does not understand, speak, read or write English.

Wang claims that after being laid off from a job in a factory, Wang was able to borrow money to purchase a Xiali-model automobile and become licensed as a taxi driver in Shenyang in 1996. By 1999, Wang's business fortunes began to suffer because the Shenyang city government allegedly allowed an increasing number of unlicensed taxis to operate in the city, taking business away from licensed taxi drivers such as himself, which made it more difficult for Wang to pay the city's licensing fees. On April 6, 2000, Wang became part of a taxi driver strike to protest the high licensing fee, lack of enforcement, and competition from unlicensed taxis. Wang was arrested for participating in the strike, then beaten with fists, feet and a police baton until he fell unconscious (J.A. 251). After approximately three weeks in detention, he was released, with warnings not to protest again and not to mention the beatings, or he would be arrested again. At this point, Wang wished to sell his taxi and move away from Shenyang, but could not because no one would buy it.

Wang married Meixiang Jin ("Jin") in 2001. According to a marriage certificate dated October 23, 2001, they registered for a marriage license on April 20, 2001 in Shenyang (J.A. 128-129). In May 2001, the city administration ordered all taxis to convert to Jieda-model automobiles by August 2001, and to purchase the new Jieda-model automobiles from a particular market (J.A.

- 2 -

25-26). Wang claims that the son of Shenyang's mayor had the exclusive Jieda franchise, and that because more than 60 percent of the taxis in Shenyang were Xiali-models, Wang could not sell his old car or afford to purchase a Jieda-model automobile.

On April 24, 2001, a visa application in Wang's name was filed with the U.S. Consulate in Shenyang (J.A. 155-56). The visa application listed Wang's correct date and place of birth, a passport number for a passport apparently issued on April 16, 2001, and Jin as Wang's wife. However, Wang's occupation was not listed as a taxi driver. At the hearing before the IJ, Wang denied filing that application or ever having a passport in his own name (J.A. 232-34, 253).

According to the asylum officer's assessment (J.A. 142-44), Wang's wife Jin applied for and was refused a visa to travel to the United States on June 8, 2001. Her visa application was approved on June 21, 2001, after the U.S. Consulate in Shenyang received a letter on behalf of the "Great Harvest International Company U.S.A.," falsely stating that Jin was a manager of a laundry company and that she would be traveling to the United States on a gambling junket to Las Vegas (J.A. 151). Jin entered the United States on June 29, 2001, heading to Las Vegas, and returned to China on July 7, 2001.

In the meantime, Wang joined a new taxi drivers' union to request more time from the city to convert taxi models. On July 15, 2001, Wang claims that he was arrested again and interrogated concerning the new union, then beaten with a baton. After a week of detention, the police sent Wang to a labor camp for three years of re-education without Wang ever appearing before a judge, but Wang was told he would be released after two years if he behaved well (J.A. 217-18). At his hearing before the IJ, Wang produced a Labor Camp Notice issued by the Shenyang city police

department on July 16, 2001, indicating that three-year sentence (J.A. 16-17), as well as warning letters received by his family after his escape indicating that he would be punished severely if he did not return to the labor camp (J.A. 19-20, 22-23).

After Wang was sent to the labor camp, Jin received a second visa to travel to the United States on August 1, 2001, and left for the United States on August 13, 2001 after seeing Wang at the labor camp (J.A. 142-44). According to Wang, when his wife visited him at the labor camp, she slipped him a note urging him to escape and telling him that his friends would help him flee China. Wang escaped from the camp on September 6, 2001. After his escape, Wang stayed with a friend named Lidong Zhang ("Zhang") (J.A. 222). While staying with Zhang, Wang paid a man named Chong Ya to arrange for his escape to the United States (J.A. 234-35). Chong Ya apparently took care of the passport and visa arrangements, as Wang did not prepare any of those papers (J.A. 234-35, 37-38). A letter from the "Great Harvest International Company U.S.A." indicating that "Lidong Zhang" was applying for a visa for a gambling junket to Las Vegas, stating that "Zhang" owned a metal products company, was sent to the U.S. Consulate on October 11, 2001 (J.A. 150). A visa application for Wang in the name of Lidong Zhang was then filed with the U.S. Consulate in Shenyang on October 17, 2001 (J.A. 157-58). Wang then traveled to the United States on October 24, 2001 with a passport and visa in the name of Lidong Zhang. Wang applied for asylum on November 6, 2001. At the hearing before the IJ, Wang claimed not to know anything about the "Great Harvest International Company U.S.A." that wrote the letter on behalf of "Lidong Zhang" for the visa that allowed him to come to the United States (J.A. 237-38).

The attorney for the Department of Justice argued at that hearing that if the visa application

filed in Wang's name on April 24, 2001, was in fact filed by Wang, then that would undermine his claims of persecution as a result of his labor organization activity, because it would show his intent to come to the United States before the July 2001 strike, arrest, beating and sentencing to a labor camp (J.A. 257).

In denying Wang's petition for asylum, after noting that if Wang's story were true, he would grant asylum, the IJ pointed to the previous visa application as the source of Wang's "credibility problem" (J.A. 270-71). According to the IJ, "[t]here is no reasonable possibility that this could be a different Wang Bo, nor does it make any sense that someone would try to impersonate Wang Bo [on the visa application] because Wang Bo, according to his testimony, did not have a passport" (J.A. 271). The IJ then discounted the idea that someone other than Wang filed the April 24 visa application (even though the application was in English, and could not have been completed by Wang alone) by stating that, "I cannot imagine what incentive the United States Consulate would have to produce false documentation to try to deprive a worthy asylum applicant of protection. To even ask the question is almost absurd." (J.A. 272-73).

Based on the determination that Wang did indeed file the April 24, 2001 visa application, the IJ found that Wang's account of persecution was not credible, that Wang was never a taxi driver (as the April 24 visa application listed a different profession), that Wang planned to leave China prior to the July 2001 strike and the ensuing events, and that those events never actually occurred (J.A. 273). Therefore, the IJ found that there was no fear of persecution (J.A. 274), and denied Wang's petition for asylum.

The BIA affirmed the IJ's decision, finding no error in the IJ's determination that Wang

failed to present sufficient credible evidence, to carry his burdens of proof and persuasion, that he suffered past persecution or that he possessed a well-founded fear of persecution if he returns to China (J.A. 2). The BIA, however, did not affirm the IJ's finding that Wang's petition was frivolous (J.A. 2).

## II.

In reviewing the denial of Wang's petition for asylum, the court must look to the IJ's decision, because the BIA's affirmance was a summary decision. *Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003). Because the IJ's decision hinges on his adverse credibility determination, the standard of review is the "substantial evidence" standard. *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004) (holding that a credibility determination is considered a finding of fact and reviewed under the "substantial evidence" standard). The "substantial evidence" standard is demanding, requiring only "slightly stricter scrutiny than the clear error standard." *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992); *Shirazi-Parsa v. INS*, 14 F.3d 1424, 1427 (8th Cir. 1994).

Under that standard, the court must uphold the IJ's findings of fact, unless Wang demonstrates that "'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)). The court "may not reverse . . . simply because [it] would have decided the matter differently." *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001) (citing *Klawitter v. INS*, 970 F.2d 149, 151-52 (6th Cir. 1992)). In order to support a finding of a lack of credibility, the inconsistencies or discrepancies in the alien's account must be "[m]ajor inconsistencies" that "go[] to the heart" of an asylum claim. *Yu*, 364 F.3d at 703-04.

In this case, the central inconsistency does go to the heart of Wang's asylum claim, or, at least, substantial evidence supports such a conclusion. Two facts provide the "substantial evidence" that prevent this court from reversing the IJ's credibility determination. First, the April 24, 2001, visa application contains personal information about Wang that would presumably be difficult for other individuals to obtain. Wang argues that such information is easily available, due to the corrupt nature of bureaucracy in China, but that argument is belied by the fact that the visa application lists Jin as Wang's wife a mere *four days* after Wang and Jin registered their marriage in Shenyang. Although the fact that Wang could not have filled out the April 24 application himself (as it is filled out in English) indicates that someone else must have been involved, the presence of that personal information prevents this court from concluding that the evidence compels reversal of the IJ's finding. *United States v. Jones*, 107 F.3d 1147, 1150 (6th Cir. 1997) (holding that the presence of "facts known peculiarly to" a person were sufficient for the district court judge to find that a person was responsible for a particular document).

Second, Wang's wife Jin was able to travel to the United States, before the July 2001 strike, on a visa supported by a fraudulent letter to the U.S. Consulate from the "Great Harvest International Company U.S.A." That same "company" wrote a letter supporting the visa application that Wang claims *was* submitted on his behalf, the October 17, 2001 visa application of "Lidong Zhang." As the IJ noted, Wang therefore had access to that kind of fraudulent documentation prior to the July 2001 strike, and that, taken together with the personal information in the April 24 application, prevents the court from finding that the evidence compels reversal.

Speaking plainly, it is quite clear that the evidence is strongly *against* Wang being

responsible for the April 24 application, just as it is quite clear that the evidence is strongly *in favor of* Wang's account of his persecution beginning in July 2001. Unfortunately, the standard of review is too stringent for the court to reverse, even if this court believes that the IJ was incorrect. As a final note, because Wang cannot establish eligibility for asylum, he cannot meet the higher standards required for withholding of removal or relief under the Torture Convention. *Yu*, 364 F.3d at 703 n.3.

## III.

For the foregoing reasons, we regrettably affirm the decision of the BIA denying Wang's asylum petition.

**ALICE M. BATCHELDER, Circuit Judge.** While I concur in the result reached by the lead opinion, I cannot agree with its assertion that the evidence is strongly against Wang's being responsible for the visa application filed in his name on April 24, 2001, or strongly in favor of his claim of persecution. In my view, the record at best contains substantial evidence supporting Wang's claims, but, as the lead opinion acknowledges, where the record also contains substantial evidence supporting the IJ's negative credibility determination, we cannot say that the record compels a conclusion different from that arrived at by the IJ.