NOT RECOMMENDED FOR PUBLICATION
File Name: 09a0440n.06

No. 08-3701

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jun 26, 2009**
LEONARD GREEN, Clerk

CHANG WEN ZHUANG, )
)
    Petitioner, )   PETITION FOR REVIEW OF THE
)    BOARD OF IMMIGRATION APPEALS
v. )
)    OPINION
ERIC H. HOLDER, JR., )
)
    Respondent. )
)

**Before: MOORE and GILMAN, Circuit Judges; and PHILLIPS, District Judge.**[*]

**RONALD LEE GILMAN, Circuit Judge.** Changwen Zhuang, a native and citizen of the

People's Republic of China, arrived in the United States without permission and was ordered

removed shortly thereafter. He subsequently sought asylum, withholding of removal, and relief

under the Convention Against Torture (CAT) on the basis of his wife's forced sterilization by

Chinese authorities. An immigration judge (IJ), finding Zhuang not to be credible, denied Zhuang's

application and ordered him removed. Zhuang filed a notice of appeal with the Board of

Immigration Appeals (BIA), but his attorney moved to withdraw as counsel due to the nonpayment

of fees and never filed a supporting brief. The BIA accordingly dismissed the appeal.

_____

[*]The Hon. Thomas W. Phillips, United States District Judge for the Eastern District of Tennessee, sitting by designation.

Zhuang next filed a motion to reopen with the BIA, alleging ineffective assistance of counsel. The BIA denied the motion, and this petition for review followed. For the reasons set forth below, we **DENY** the petition for review.

## I. BACKGROUND

Zhuang entered the United States at Hidalgo, Texas on May 14, 2004. An Immigration Officer, after an interview, declined to admit or parol him. Immigration-court proceedings against Zhuang were initiated two days later, where he was charged with being subject to removal as an alien present in the United States without having been admitted or paroled pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). Zhuang was granted two changes of venue, first from Houston, Texas to New York City, and then from New York City to Cincinnati, Ohio. In an affidavit submitted in support of the first change of venue, Zhuang admitted the allegations contained in his notice to appear and conceded removability.

Zhuang filed a defensive application for asylum, withholding of removal, and protection under the Convention Against Torture on May 5, 2005. He claimed that he and his wife were persecuted by the Chinese government for violating the one-child family-planning policy. Specifically, Zhuang stated that he was fined large sums of money and that his wife was forcibly sterilized for their violations of the policy. Zhuang asserted on his asylum application that he would "be persecuted, tortured, and suffer bodily injury because of the Chinese government policy of forcible birth control."

After a September 2006 hearing on the merits, the IJ denied Zhuang's application on the basis of an adverse credibility finding. The IJ found that Zhuang's testimony was "general, vague, and internally [in]consistent in places as well as not consistent in its entirety with his written application or with the known background conditions as set out in the State Department profile of asylum claims for Fujian Province in this area." In addition to the specific factual inconsistencies that the IJ identified in support of the adverse credibility finding, the IJ noted that when Zhuang was asked why he came to the United States, he initially did not mention either the threat of forced sterilization or opposition to the Chinese family-planning practices. Rather, he stated that he came to this country "because it is hard to survive in China" and, because he had to support his entire family, he had "to leave to go somewhere else."

Zhuang's testimony also clearly established that he was not married at the time that his wife allegedly underwent sterilization. That fact led the IJ to conclude that, under existing BIA precedents, Zhuang could not establish either past persecution or that he was a refugee for purposes of asylum because he did not allege that he was persecuted in China for "other resistance to a coercive population control program." *See Matter of C-Y-Z-*, 21 I&N Dec. 915 (BIA 1997), and *Matter of S-L-L-*, 24 I&N Dec. 1 (BIA 2006), *partially overruled on other grounds by Shi Lang Lin v. United States Dep't of Justice*, 494 F.3d 296, 309-10 (2d Cir. 2007), and by *Matter of J-S-*, 24 I&N Dec. 520, 523 (A.G. 2008)). The IJ concluded that Zhuang's failure to credibly establish his eligibility for asylum meant that Zhuang necessarily failed to meet the higher burden of proof for

withholding of removal. Finally, as to the CAT claim, the IJ found that Zhuang failed to demonstrate that he would face any reasonable chance of torture on his return to China.

Zhuang filed a Notice of Appeal of the IJ's decision with the BIA in October 2006. He stated in his Notice of Appeal that he intended to file a separate written brief. The BIA then issued a briefing schedule setting a July 17, 2007 filing deadline. But on July 15, 2007, Zhuang's original counsel sent a letter to the BIA moving to withdraw as counsel for Zhuang on the grounds of unpaid attorney fees and that counsel was unable to contact Zhuang either in writing or by telephone.

The government filed a motion for summary dismissal on August 7, 2007, citing Zhuang's failure to file a brief or statement in support of his appeal as he had stated an intention of doing. Zhuang's counsel was notified by the BIA the next day that the motion to withdraw was deficient because it did not reflect that Zhuang had been served with a copy of the letter or advised of "his briefing schedule or other responsibilities." By this time Zhuang had retained his current counsel, who entered a notice of appearance on August 13, 2007. On the same day, August 13, Zhuang's original counsel resubmitted his motion to withdraw along with additional documentation curing the deficiencies of the original motion. The BIA subsequently granted the motion of Zhuang's original counsel to withdraw on September 4, 2007.

In October 2007, the BIA issued a decision dismissing Zhuang's appeal on the basis that he had failed to meet the essential statutory and regulatory requirements by not providing a brief or statement in support of his appeal. *See* 8 C.F.R. § 1003.1(d)(2)(i)(E) & (H). Reviewing Zhuang's notice of appeal, the BIA found that the notice provided little articulable basis for the appeal other

than general assertions that the IJ's decision was "contrary to the law" and "contrary to the weight of the evidence." The BIA held that such general assertions did not adequately specify a reason for the appeal as required by 8 C.F.R. §§ 1003.1(d)(2)(i)(A) and 1003.3(b).

Zhuang did not seek this court's review of the BIA's decision. Instead, in January 2008, he filed a motion to reopen with the BIA in which he alleged deficient performance of counsel and set forth his compliance with the requirements of *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988). He noted that the IJ, in making the adverse credibility finding, had acknowledged that some of the inconsistencies or discrepancies in Zhuang's application and testimony "did not carry much weight on their own." This comment, Zhuang argued, reflected that he would have had "a better chance to argue the merits in his case before the BIA by submitting a well-organized brief as requested by the regulations." Zhuang thus concluded that "his constitutional right to due process was violated by his prior counsel's conduct," and asked the BIA to reopen the proceedings based on deficient performance of counsel.

The BIA issued a decision denying Zhuang's motion to reopen in May 2008. It assumed for the sake of argument that Zhuang had complied with the requirements of *Matter of Lozada* when he filed his motion to reopen based on deficient performance of counsel. But the BIA found that Zhuang had failed to state how the filing of the brief would have (1) overcome the IJ's adverse credibility finding, or (2) enable him to avoid the effects of *Matter of S-L-L-*, 24 I&N Dec. 1 (BIA 2006), which bars him from relief. The BIA thus concluded that the motion to reopen failed to

establish that, even if Zhuang's counsel was deficient, Zhuang had been prejudiced. Zhuang has timely petitioned this court to review the BIA's decision.

## II. ANALYSIS

### A. Standard of review

We review the BIA's denial of a motion to reopen a removal order under the abuse-of-discretion standard. *Fang Huang v. Mukasey*, 523 F.3d 640, 654 (6th Cir. 2008). "An abuse of discretion can be shown when the IJ or Board offers no rational explanation, inexplicably departs from established policies, or rests on an impermissible basis such as invidious discrimination against a particular race or group." *Id.* (citation and brackets omitted). An alien's claim of ineffective assistance of counsel is, however, reviewed de novo. *Allabani v. Gonzales*, 402 F.3d 668, 676 (2005) (citing *INS v. Doherty*, 502 U.S. 314, 321-22 (1994)).

### B. Ineffective assistance of counsel

The sole issue that Zhuang raises in his petition for review is whether he should be allowed to reopen his case due to what he claims was ineffective assistance by his former counsel. Before we address the merit of that issue, however, we must first note that whether aliens such as Zhuang have any right to assistance of counsel at all is presently an unsettled question. This court has long held that aliens in removal proceedings are entitled to the due process of law guaranteed by the Fifth Amendment to the United States Constitution, *see, e.g.*, *Sako v. Gonzales*, 434 F.3d 857, 859 (6th Cir. 2006); *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001), and that ineffective

assistance of counsel violates an alien's due process rights. *Hamid v. Ashcroft*, 336 F.3d 465, 468 (6th Cir. 2003).

On January 7, 2009, however, the outgoing Attorney General issued an opinion holding that aliens in removal proceedings *do not* have a right to the assistance of counsel. *See Matter of Compean*, 24 I&N Dec. 710, 726-27 (A.G. 2009). But *Compean* was recently vacated by the new Attorney General in an opinion stating that IJs and the BIA "should apply the pre-*Compean* standards to all pending and all future motions to reopen based upon ineffective assistance of counsel." 25 I&N Dec. 1, 3 (A.G. 2009).

To prevail on an ineffective-assistance-of-counsel claim, an alien must first comply with certain procedures laid out by the BIA in *Matter of Lozada*, 19 I&N Dec. 637 (1988). An alien who claims ineffective assistance of counsel is required, under *Lozada*,

> (1) to file an affidavit stating his agreement with former counsel with respect to the actions to be taken on appeal and what counsel did [or] did not represent to the alien in this regard; (2) to show that former counsel was informed of the allegations and was given an opportunity to respond; and (3) to state whether a complaint has been filed with appropriate disciplinary authorities regarding the allegedly ineffective representation.

*Sswajje v. Ashcroft*, 350 F.3d 528, 533 (6th Cir. 2003) (citing *Matter of Lozada*, 19 I & N Dec. at 639).

Zhuang appears to have satisfied the *Lozada* procedural requirements, and the government does not argue otherwise on appeal. We will thus assume that he has done so; we need not examine the procedural issue in any depth because Zhuang's ineffective-assistance-of-counsel claim hinges on the next prong of our analysis—prejudice.

The second requirement for an alien seeking to establish ineffective assistance of counsel is a showing that counsel's performance "prejudiced him or denied him fundamental fairness." *Sako*, 434 F.3d at 859 (citation and internal quotation marks omitted). Prejudice means that, but for counsel's ineffective assistance, the result of the proceedings would have been different. *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005). An alien's loss of his right to appeal does not, without more, establish prejudice. *Sako*, 434 F.3d at 865. Instead, the alien must show that he "would have been entitled to continue residing in the United States." *Huicochea-Gomez*, 237 F.3d at 699-700 (6th Cir. 2003).

Zhuang argued in his motion to reopen that he "would have a much better chance to argue the merits in his case before the BIA by submitting a well-organized brief." Similarly, Zhuang states in his appellate brief that "but for the former counsel's failure to submit the appeal brief, there would have been a reasonable likelihood [for] Petitioner to achieve a favorable outcome in his appeal . . . ." But Zhuang's motion to reopen and his appellate brief are woefully short on details showing why he would have been entitled to withholding of removal had counsel filed a brief in support of his appeal to the BIA.

The only substantive argument Zhuang advances relates to the IJ's adverse credibility determination:

> The IJ made his adverse credibility determination based on some discrepancies in Petitioner's testimony and I-589 application. But as admitted by the IJ himself in the oral decision, "some points do not carry much weight on their own." . . . We shall be mindful of the ambivalence in the IJ's opinion that he emphasized more than once in the decision that he would not put too much weight on these inconsistencies concerning the Petitioner's limited educational background.

Zhuang's reliance on the IJ's alleged "admission" is misplaced, however, because it is taken out of context and inaccurately reflects the IJ's credibility finding. The IJ's full summary comes after his account of the numerous inconsistencies and discrepancies that Zhuang could not explain, and is as follows:

> In short, while each of these points may have different weight and some individually do not carry much weight on their own, cumulatively or in the aggregate I believe these points that I have identified justify me and lead me to conclude that Zhuang has not been credible today.

Aside from selectively quoting this portion of the IJ's decision, Zhuang offers only two passing references to the actual details of the IJ's credibility determination. He states that the IJ

> concentrated in [sic] grilling the Petitioner about the specific dates that happened more than 7 years ago although the Petitioner kept telling him that he could not remember after so many years. Furthermore, knowing of the Petitioner's limited educational background, the IJ insisted in [sic] questioning the Petitioner about the detailed sterilization procedure Petitioner's wife went through and totally ignored the corroborating evidences [sic].

These conclusory arguments, coupled with a general reference to documentary evidence, are insufficient in light of the deferential standard that we are bound to employ when reviewing an IJ's credibility findings. We may overturn such findings only if "any reasonable adjudicator would be compelled to conclude to the contrary." *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)). Whether we would have placed less emphasis on certain of Zhuang's answers regarding dates or the details of his wife's sterilization procedure, or placed more emphasis on the documentary evidence, is irrelevant for purposes of our review. *See Koliada v. INS*, 259 F.3d

482, 486 (6th Cir. 2001) ("[W]e may not reverse the Board's [or the immigration judge's] determination simply because we would have decided the matter differently.").

Zhuang has not even attempted to explain the numerous contradictions and discrepancies in the record, such as his failure to mention sterilization when initially asked why he came to the United States, and the conflict between his testimony that the family-planning authorities came looking for him every week for an entire year prior to his wife's sterilization and the record evidence showing that his wife underwent sterilization approximately two months after the birth of their second child. Even if we were to comb through the record and construct plausible arguments for Zhuang, the record nonetheless remains clear that the IJ's adverse credibility finding was supported by substantial evidence. *See Gishta*, 404 F.3d at 978 n.12 (holding that contradictions or discrepancies within or between an applicant's written statement, an applicant's testimony, and any corroborating evidence that an applicant submits can support such an adverse finding). Zhuang cites no evidence that would compel a favorable credibility finding; he therefore cannot show that the failure to file a brief before the BIA resulted in prejudice.

Although Zhuang at least makes conclusory arguments regarding the credibility finding, he makes no argument whatsoever regarding the second dispositive issue at hand—the BIA's decision in *Matter of S-L-L*, 24 I&N Dec. 1 (BIA 2006). There, the BIA held that unmarried asylum applicants claiming persecution based on a partner's coerced abortion or sterilization may qualify for asylum only if they establish "other resistance to a coercive population control program." *Id.* at 8-10 (quoting 8 U.S.C. § 1101(a)(42)). The IJ found that Zhuang was not legally married to his wife

at the time she allegedly underwent the sterilization procedure, and that he had failed to show that he was persecuted for "other resistance." Zhuang was therefore tasked with demonstrating in his motion to reopen how, but for his counsel's deficient performance, he would have established that he was qualified for asylum in light of *Matter of S-L-L-*. No argument on this point, however cursory, is to be found in either Zhuang's motion to reopen or in his appellate brief. He therefore cannot establish prejudice. *See Huicochea-Gomez*, 237 F.3d at 699-700 (holding that, in order to show a denial of due process based on the ineffective assistance of counsel, the alien must demonstrate that he was entitled to the underlying relief requested).

Prejudice and fundamental fairness are "analogous" in ineffective-assistance-of-counsel cases. *Sako*, 434 F.3d at 863-64. Thus, for the same reasons that Zhuang fails to establish prejudice, he also fails to establish fundamental unfairness that would violate due process.

In sum, Zhaung's inability to establish prejudice or fundamental unfairness arising out of his prior counsel's failure to file a BIA brief dooms his ineffective-assistance-of-counsel claim. Nor does Zhuang present any claim regarding the performance of his current counsel, who could have moved for an extension of time to file the BIA brief but did not do so. *See* 8 C.F.R. § 1003.3(c)(1) (providing a 21-day time period to file a brief from the time the BIA gives notice to do so, but allowing for exceptions upon written motions showing good cause for the delay). Zhuang has therefore failed to demonstrate that the BIA abused its discretion in denying his motion to reopen.

### III. CONCLUSION

For all of the reasons set forth above, we **DENY** Zhuang's petition for review.

**KAREN NELSON MOORE, Circuit Judge, concurring.** I concur in the majority opinion.

I write separately to highlight our circuit's unnecessarily harsh prejudice standard for ineffective-assistance-of-counsel claims raised by aliens under the Due Process Clause of the Fifth Amendment.

As the majority correctly notes, to establish prejudice for an ineffective-assistance-of-counsel claim in our circuit based on the Due Process Clause an alien must show that "but for the ineffective assistance of counsel, he would have been entitled to continue residing in the United States." *Sako v. Gonzales*, 434 F.3d 857, 864 (6th Cir. 2006). Thus, an alien must show definitively that he or she would have received relief absent counsel's error. Our circuit's demanding test for a showing of prejudice sets that bar far higher than most other circuits, which require only a showing of a reasonable probability that the outcome of the proceeding would have been different had counsel been effective. *See, e.g., Fadiga v. Attorney Gen. of the United States*, 488 F.3d 142, 159 (3d Cir. 2007) (holding that, to show prejudice, an alien must demonstrate "a reasonable likelihood that the result [of the immigration proceedings] would have been different" absent counsel's error (internal quotation marks omitted)); *Saakian v. I.N.S.*, 252 F.3d 21, 25 (1st Cir. 2001) (holding that an alien must "show at least a reasonable probability of prejudice"); *Obleshchenko v. Ashcroft*, 392 F.3d 970, 972 (8th Cir. 2004) (holding that, in order to establish prejudice, aliens must "show[] that their attorney's performance was so inadequate that it *may* well have resulted in a deportation that would not otherwise have occurred" (internal quotation marks omitted) (emphasis added)); *Dakane v. United States Attorney Gen.*, 399 F.3d 1269, 1274 (11th Cir. 2005) ("Prejudice exists when the performance of counsel is so inadequate that there is a reasonable probability that but for the

attorney's error, the outcome of the proceedings would have been different."); *Mohammed v. Gonzales*, 400 F.3d 785, 794 (9th Cir. 2005) (holding that an alien need "demonstrate only that she has *plausible* grounds for relief" to show prejudice). *But see Miranda-Lores v. I.N.S.*, 17 F.3d 84, 85 (5th Cir. 1994) (requiring an alien to make a prima facie showing that, but for counsel's failure, he would have been entitled to relief). Unlike our circuit, the prevailing standard does not require an alien to prove with absolute certainty that he or she would have received the relief sought.

A difference in standards between our circuit and other circuits would be understandable and likely justifiable if our standard were based on sound logic or precedent. However, the first case in our circuit to establish the prejudice standard at issue, *Huicochea-Gomez v. I.N.S.*, 237 F.3d 696 (6th Cir. 2001), cited no Sixth Circuit or Supreme Court case in support of its grueling test. *See id*. at 699-700. In fact, *Huicochea-Gomez*'s analysis of the prejudice issue is confined to one conclusory sentence. *See id*. ("To prevail, the Huicocheas *must establish* that but for [counsel's] legal advice, they would have been entitled to continue residing in the United States." (emphasis added)). Once *Huicochea-Gomez* announced its binding test for prejudice, subsequent panels were compelled to follow it and offered no further analysis. *See, e.g., Sako*, 434 F.3d at 864; *Ljucovic v. Gonzales*, 144 F. App'x 500, 503 (6th Cir. 2005); *Denko v. I.N.S.*, 351 F.3d 717, 724 (6th Cir. 2003). Thus, our circuit subjects aliens to a standard more harsh than that of our sister circuits without any analytical foundation to warrant the disparity. Such a practice is unwise, particularly given the importance of claims of ineffective assistance of counsel in immigration proceedings, as evidenced by the issuance

of two Attorney General opinions on the matter within months of each other. *See Matter of Compean*, 24 I&N Dec. 710 (A.G.), *vacated by* 25 I&N Dec. 1 (A.G. 2009).

Most circuits with less-stringent standards have based their prejudice analysis on the "reasonable probability" standard stated in *Strickland v. Washington*, 446 U.S. 668 (1984), that is applicable to Sixth Amendment ineffective-assistance-of-counsel claims raised by criminal defendants. *See, e.g.*, *Obleshchenko*, 392 F.3d at 972 (noting that its prejudice "standard is akin to the requirement under the sixth amendment that there be 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'" (quoting *Strickland*, 466 U.S. at 694)); *Hernandez v. Reno*, 238 F.3d 50, 56 (1st Cir. 2001) (applying the *Strickland* "reasonable probability" standard); *Fadiga*, 488 F.3d at 158-59 (applying a "reasonable likelihood" standard based on *Strickland*'s "reasonable probability" standard). Such reliance provides a logical justification for subjecting aliens to this lower prejudice hurdle. Our heightened standard lacks any such justification.

In view of the complete lack of analytical foundation to support the Sixth Circuit's harsh rule and the contrary views of numerous other circuits, we should reexamine our standard in an appropriate case en banc. Because Zhuang cannot show prejudice under either the stringent *Huicochea-Gomez* standard or the more appropriate reasonable-probability standard, however, and because we are bound by *Huicochea-Gomez* until overturned by this court sitting en banc or by the Supreme Court, I concur in the majority opinion.