NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0833n.06

No. 09-3058

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| BO WANG, | ) | |
| | ) | **FILED** |
| Petitioner-Appellant, | ) | **Dec 29, 2009** |
| | ) | LEONARD GREEN, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES BOARD OF IMMIGRATION |
| ERIC HOLDER, Jr., United States | ) | APPEALS |
| Attorney General, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |

Before:  BATCHELDER, Chief Judge, GIBBONS, Circuit Judge, and MALONEY, Chief District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge**.  Petitioner-appellant Bo Wang appeals from a decision of the Board of Immigration Appeals ("BIA") denying a motion to reopen his petition for asylum.  For the reasons that follow, we AFFIRM.

I.

Wang, a native of the Peoples' Republic of China, applied for asylum based on alleged persecution by the Chinese government for his involvement in an underground taxi drivers' union.  Wang asserted that he had been imprisoned for taking part in related protests and fled to the United States after escaping from a prison labor camp.  He arrived in the United States on October 24, 2001,

_____

[*] The Honorable Paul L. Maloney, United States Chief District Judge for the Western District of Michigan, sitting by designation.

using an alias and a fraudulent passport and visa. Wang had previously but unsuccessfully attempted to secure a visa to the United States under his own name in April 2000. The inconsistencies and duplicity evidenced by the two visa applications, and the fraudulent documents used to obtain the 2001 visa, formed the basis of the Immigration Judge's ("IJ") negative credibility determination, denial of asylum, and finding that the application had been frivolous.

On April 22, 2005, the BIA upheld the IJ's adverse credibility determination and order of removal but did not affirm his finding of frivolous filing. Wang appealed the BIA's order to this court, which "regrettably" affirmed, finding that "the central inconsistency does go to the heart of Wang's asylum claim, or, at least, substantial evidence supports such a conclusion." *Wang v. Gonzales*, 188 F. App'x 454, 455, 457 (6th Cir. 2006).

After the denial of his application, Wang sought representation from Lili Yang, a non-attorney who ran an immigration office in California.[1] *Id.* Lauren Mason, an attorney apparently connected in some way with Lili Yang's office, filed a notice of entry of appearance as attorney for Wang on September 16, 2006, and a motion to reopen "due to changed circumstances and new evidence" on October 3, 2006. In that motion, Wang claimed that because he sent anti-Communist articles to friends in China and was an active member of the China Democracy Party ("CDP") in the

---

[1] The exact nature of the arrangement between Wang, Mason, and Lili Yang is not documented. In a signed declaration by Wang that accompanied his October 2008 motion to reopen based on ineffective assistance of counsel, he described the relationship:

> I found an immigration office. The person who runs the office is Lili Yang. . . . Lili Yang is not an attorney. She uses the name of Lauren Mason Esq. to run business. I gave Lili Yang around 2,000 dollars to handle my case. Lauren Mason and I have never met each other before. He has never discussed my case with me.

ROA at 26.

United States, the Chinese authorities had arrested the recipients of the materials, harassed his family, and would seek to arrest him as soon as he returned to China.[2]

The BIA rejected this first motion to reopen because it lacked a certificate of service on the opposing party. The BIA reviewed and denied a further motion to accept the rejected motion to reopen on January 4, 2007, because the motion had been filed well after the 90-day deadline to appeal the denial of its April 22, 2005, order. The BIA further found that Wang had failed to "establish a change in circumstances arising in China for purposes of meeting the [8 C.F.R.] § 1003.2(c)(3)(ii) exception to the filing deadline." ROA at 134. The BIA went on to note that the new materials submitted by Wang were "not specific to the respondent" and that the assertions that were specific to him were "general and unsupported assertions" by Wang himself and therefore insufficient to demonstrate that, if the case were reopened, the new evidence "would likely change the result." ROA at 134 (citing *Matter of Coelho*, 20 I. & N. Dec. 464 (B.I.A. 1992)).

Wang then contacted friends in China to send letters to support his assertions, and Mason filed a motion to reconsider the denial of the motion to reopen and included "new evidence" to cure the defects noted by the BIA. The new evidence included date stamps added to the previously undated photographs and letters from three former colleagues of Wang describing the Chinese authorities' harassment and arrests of those who had received articles from Wang.

---

[2] Wang does not provide a time frame for his involvement in the CDP or the sending of materials to his friends in China. It is therefore unclear whether he was an active member of the CDP and allegedly sought by the Chinese authorities before the 90-day deadline for a motion to reopen would have expired in July 2005.

The BIA denied the motion to reconsider as untimely because it had arrived one day after the 30-day deadline for filing a such a motion had expired. Lili Yang had sent the motion by overnight express on Friday, February 3, 2006. By its own admission, the mail service failed to deliver the motion on February 5 as it had guaranteed and instead delivered that motion on February 6. In an attempt to cure this latest mistake, Mason filed a motion to accept a previously denied motion to reconsider, which the BIA rejected because it did not include a fee or fee waiver. Mason then filed a second motion to accept by certification a rejected motion. The BIA denied the motion on July 17, 2009, noting that the BIA had made no error in finding the motion untimely and that, in any case, 8 C.F.R. § 1003.2(b)(2) precluded jurisdiction over the denial of a motion to reconsider.

Following the July 17, 2007, order, Wang contacted the USA International Immigration Attorney Center ("USA International"). There he made an arrangement with Allen Yang, another non-attorney, to assist him in filing a petition for review by this court. *Id.* Allen Yang did not enter a notice of representation, but did file the petition for review *pro se* on behalf of Wang, listing USA International's address as Wang's contact address. However, Allen Yang erroneously sent Wang's petition to the Office of Immigration, resulting in its late filing with the Sixth Circuit clerk. A panel of this court consequently dismissed the petition for review as untimely. *Bo Wang v. Mukasey*, No. 07-4049 (6th Cir. Feb. 14, 2008).

Undeterred, Wang hired yet another immigration attorney, Quiang Bjornbak, around October 4, 2008. Bjornbak helped to give notice to Mason that Wang would be filing a claim before the BIA on the grounds of ineffective assistance of counsel and to file complaints against both Mason and

Allen Yang with the State Bar of California. Bjornbak filed a second motion to reopen and a request for an emergency stay of deportation on October 20, 2008.

Finding no due process violation because Wang had failed to demonstrate prejudice from the alleged ineffective assistance of counsel, the BIA denied the motion on December 31, 2008. Without explanation, the BIA also noted that Wang had not met the conditions necessary to file an untimely and successive motion to reopen. Namely, Wang presented no evidence of "changed circumstances arising in the country of nationality [that is] material and was not available and could not have been discovered or presented at the previous hearing." ROA at 2 (citing 8 C.F.R. § 1003.2(c)(3)(ii)). The BIA also noted that Wang had not demonstrated the necessary conditions in his previous motions, nor had he shown that, had the previous motions been timely filed, the evidence presented would likely have changed the result in the case. ROA at 2–3 (citing *Matter of Coelho*, 20 I. & N. Dec. at 473). Wang timely appealed the December 31 order.[3]

## II.

Wang challenges the BIA's denial of his motion to reopen because of ineffective assistance of counsel.[4] He argues that the BIA erred in concluding that he had not suffered prejudice from

[3]In his brief before this court, in addition to appealing the BIA's December 31, 2008, order, Wang sought generalized relief and reconsideration of the prior denied motions to reopen and reconsider. However, because we may only review the decision for which the petition of review was filed, *Stone v. INS*, 514 U.S. 386, 405-06 (1995), our review is limited to only the December 31 order.

[4] The government argues that there is no constitutional right to effective assistance of counsel for aliens in removal proceedings. Although this court has recognized such a right, *see Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001) ("Fifth Amendment guarantees of due process extend to aliens in deportation proceedings."), the existence of that right continues to be debated. On January 7, 2009, the Attorney General decided *Matter of Compean*, 24 I. & N. Dec. 710 (A.G.

alleged ineffective assistance of counsel and that he had failed to demonstrate changed country conditions in China and new material evidence sufficient to overcome the time- and number-bars to filing a motion to reopen. He also argues that he is entitled to equitable tolling of the time limitation for filing such a motion because of ineffective assistance of counsel.

We review the BIA's denial of a motion to reopen for abuse of discretion. *INS v. Doherty*, 502 U.S. 314, 323–24 (1992); *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006). Consequently, we must affirm an order of the BIA unless it "[is] without a rational explanation, [is an] inexplicable depart[ure] from established policies, or rest[s] on an impermissible basis such as invidious discrimination against a particular race or group." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)) (quotation marks omitted). A claim of ineffective assistance of counsel in a removal proceeding is an issue of law that is reviewed *de novo*. *Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006).

III.

Wang catalogues numerous alleged instances of ineffective assistance of counsel by his various attorneys and non-attorney representatives. Many of those examples are indeed compelling. However, in order for a motion to reopen based on ineffective assistance of counsel to succeed, the

---

2009), which held that "there is no Fifth Amendment right to effective assistance of counsel in removal proceedings" and overruled *Matter of Lozada*, 19 I. & N. Dec. 637 (B.I.A. 1988), and *Matter of Assaad*, 23 I. & N. Dec. 553 (B.I.A. 2003). However, on June 3, 2009, the Attorney General vacated *Matter of Compean* "pending the outcome of a rulemaking process" and directed the BIA and IJs "to continue to apply the previously established standards for reviewing motions to reopen based on claims of ineffective assistance of counsel." *Matter of Compean*, 25 I. & N. Dec. 1 (A.G. 2009). Therefore, we need not address the question of whether aliens in removal proceedings have a Fifth Amendment right to ineffective assistance of counsel and will review the BIA's order according to *Lozada* and *Assaad* without reference to *Compean*.

petitioner must (a) comply with the procedural requirements established by *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (B.I.A. 1988); and (b) demonstrate that the ineffective assistance of counsel resulted in prejudice or fundamental unfairness to the petitioner. *Sako*, 434 F.3d at 863 (citing *Matter of Assaad*, 23 I. & N. Dec. 553, 556 (B.I.A. 2003)).

We conclude that because Wang failed to comply with the *Lozada* requirements, he has forfeited his claim of ineffective assistance of counsel. Furthermore, even if he had complied, we agree with the BIA that he has failed to demonstrate that he suffered prejudice from the alleged actions and inactions of his various representatives because he cannot establish that but for the ineffective assistance of counsel, his underlying asylum claim would have been granted. *See Huicochea-Gomez*, 237 F.3d at 699–700. We therefore affirm the BIA's December 31 order denying Wang's motion to reopen.

A.

"An alien who fails to comply with *Lozada*'s requirements forfeits her ineffective-assistance-of-counsel claim." *Pepaj v. Mukasey*, 509 F.3d 725, 727 (6th Cir. 2007). Thus, in order to prove ineffective assistance of counsel, an alien must

> (1) submit an affidavit describing the agreement for representation entered into with former counsel, (2) inform former counsel of the charge for the purpose of allowing him to respond to the complaints being made against him, and (3) report whether a complaint has been filed with the appropriate disciplinary authorities.

*Hamid v. Ashcroft*, 336 F.3d 465, 468 (6th Cir. 2003) (quoting *Huicochea-Gomez*, 237 F.3d at 699 (citing *Matter of Lozada*, 19 I. & N. Dec. at 637)).

As a preliminary matter, it is unclear whether Wang can bring an ineffective assistance of counsel claim as to the assistance of non-attorney representatives Lili Yang and Allen Yang. Neither

was an accredited representative, and neither filed a notice of appearance on behalf of Wang. Citing *Hernandez v. Mukasey*, 524 F.3d 1014 (9th Cir. 2008), the government argues that ineffective assistance of counsel claims are unavailable to challenge the performance of non-attorneys. *See* 524 F.3d at 1015–16 ("We hold that knowing reliance upon the advice of a non-attorney cannot support a claim a claim for ineffective assistance of counsel in a removal proceeding."). Although we have yet to address this issue directly, we have suggested that claims regarding non-attorney assistance may not be barred—at least for accredited representatives. *See Al Roumy v. Mukasey*, 290 F. App'x 856, 862 (6th Cir. 2008) (noting that we have held at least the first two *Lozada* requirements obligatory when alleging ineffective assistance of counsel by accredited representatives). However, because Wang fails to comply with *Lozada* as to either Lili Yang or Allen Yang,[5] we need not reach this question at this time. We conclude that Wang has forfeited his claims of ineffective assistance of counsel with respect to both Lili and Allen Yang.

Wang also forfeited his claim of ineffective assistance of counsel as to Mason. Facially, Wang attempted to comply with all three *Lozada* requirements. On his behalf, Wang's attorney notified Mason of the pending claim and provided time—albeit brief—to respond. Wang also filed a complaint against Mason with the California Bar. Wang, therefore, did satisfy the second and third *Lozada* requirements. Where Wang's claim fails, however, is the first requirement.

---

[5]While Wang did file a complaint against Allen Yang with the California Bar, thereby satisfying the third *Lozada* factor, he took no such action with regards to Lili Yang. Wang also did not comply with the second factor because he failed to notify either representative of his intent to pursue an ineffective assistance of counsel claim and allow the representative the opportunity to respond.

In order to comply with the first procedural requirement, *Lozada* obliges an alien to file an affidavit outlining the agreement between counsel and petitioner. This affidavit "should include a statement that sets forth in detail the agreement that was entered into with former counsel with respect to the actions to be taken . . . and what counsel did or did not represent . . . in this regard." *Hamid*, 336 F.3d at 468 (citing *Matter of Lozada*, 19 I. & N. Dec. at 639). In *Hamid*, we found that "allegations concerning what his counsel failed to do, but [] not [] what actions his counsel promised to undertake" failed this first requirement and resulted in forfeiture of Hamid's ineffective assistance of counsel claim. *Id.*; *see also Ljucovic v. Gonzales*, 144 F. App'x 500, 504 (6th Cir. 2005) ("Even if we could infer . . . an implicit agreement with regard to Kulics's representation, the affidavit still falls short. It simply fails to provide any detail concerning what representation Kulics agreed to provide because the only information provided is that Ljucovic hired him to represent her.").

In an attempt to comply with the first requirement, Wang filed an affidavit outlining his ill-fated experiences with all of his attorneys and representatives over the preceding eight years. Wang's declaration, like Hamid's, concentrated on the faults of counsel, rather than on what representation they undertook to provide. Indeed, Wang's statement demonstrates that he never had an agreement with Mason, with whom he never spoke, but rather with Lili Yang. The full extent of Wang's description of his agreement with Mason follows:

> I found an immigration office. The person who runs the office is Lili Yang. . . . Lili Yang is not an attorney. She uses the name of Lauren Mason Esq. to run business. I gave Lili Yang around 2,000 dollars to handle my case. Lauren Mason and I have never met each other before. He has never discusses [sic] my case with me.

ROA at 26. This meager explanation is no doubt complicated by the less-than-forthcoming nature of Lili Yang's business relationship with Mason. Wang appears to have been snared in a web of

incompetent and possibly underhanded immigration consulting offices that are not uncommon to those in his situation. Unfortunately, the lack of description and brevity of his statement constitutes noncompliance with the first *Lozada* requirement and, therefore, forfeiture of his ineffective assistance of counsel claim.

B.

Even if Wang had complied with the procedural requirements of *Lozada*, his claim would fail because he did not demonstrate that any prejudice or fundamental unfairness resulted. "When an alien makes a claim of ineffective assistance of counsel in a removal proceeding he 'carries the burden of establishing that ineffective assistance of counsel prejudiced him or denied him fundamental fairness in order to prove that he has suffered a denial of due process.'" *Sako*, 434 F.3d at 859 (citations omitted). In order to establish prejudice, Wang "must establish that, but for the ineffective assistance of counsel, he would have been entitled to continue residing in the United States." *Id.* at 864. Thus, "the key to due process analysis in these cases is the effect on the outcome of the underlying claim." *Sako*, 434 F.3d at 865.

In *Denko v. INS*, 351 F.3d 717, 724 (6th Cir. 2003), the attorney allegedly failed to ensure Denko's presence at the removal proceedings. Denko argued that if she had been present, an order issued without her appearance "would not have been entered against her." *Id.* This court noted that "[w]hile this may very well be accurate, this is not equivalent to a showing that if Denko attended . . . she would have been granted the asylum she sought." *Id.* Similarly, in the instant case, even if Wang could show that, but for the ineffective assistance of counsel, the BIA would have granted his

-10-

motion to reopen based on changed country conditions, he also would have to show that asylum would have then been granted. This he has not done.

An alien generally may file only one motion to reopen a final order of removal, and must do so within 90 days of the rendering of the challenged order. 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). An exception to this time and number bar permits an alien "[t]o apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality . . . if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii); *see also Haddad*, 437 F.3d at 517; *Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004). Even if these conditions are met, however, "[t]he Supreme Court has made clear that reopening is discretionary with the BIA and that the BIA retains broad discretion to grant or deny such motions[, and] a party seeking reopening bears . . . a 'heavy burden.'" *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007) (quoting *Doherty*, 502 U.S. at 323). Thus, in order for Wang to demonstrate that he is entitled to remain in the United States, and thereby that he has suffered prejudice by any alleged ineffective assistance of counsel, he must establish that he produced evidence sufficient to satisfy this "heavy burden," and that the result would likely have been different had the BIA reviewed the evidence presented anew.

The "heavy burden" and the limitation of changed circumstances to changed *country* conditions rather than changed *personal* circumstances is necessary because to "[g]rant[] such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case." *INS v. Wang*, 450 U.S. 139, 143 n.5 (1981). The evidence provided by Wang to support his underlying motion

to reopen based on changed country conditions is at best insufficient and at worst an exemplar of this kind of creativity.

An alien seeking "to reopen based on changed country conditions 'cannot rely on speculative conclusions or mere assertions for fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution.'" *Harchenko*, 379 F.3d at 410 (quoting *Dokic v. INS*, No. 92-3592, 1993 WL 265166, at *4 (6th Cir. July 15, 1993)).

In *Lindor v. Holder*, 317 F. App'x 492, 495–96 (6th Cir. 2009), the petitioner had published a book critical of the Haitian government after his asylum claim had been denied. Lindor also conducted call-in interviews with a Haitian radio station to promote the book, the result of which, he alleges, led to receipt of email threats from Haiti. *Id.* at 496. We agreed with the BIA that the fear of persecution Lindor articulated was caused by changed personal conditions and not "changed country conditions arising in the county of nationality." *Id.* at 497–98 (citing 8 U.S.C. § 1229a(c)(7)(C)(ii)) (internal quotation marks omitted).

Similarly, Wang alleges an "individualized fear of persecution," *id.*, in that he claims that the Chinese authorities are aware of his pro-democracy activism in the United States and will arrest and harm him on his return. However, Wang's fear of persecution is due to a change in personal circumstances rather than changed conditions within China. The claim of persecution due to membership in the CDP and participation in pro-democracy activities in the United States resulted from choices made and actions taken while in the United States. *See Niyibizi v. Mukasey*, 300 F. App'x 371, 375 (6th Cir. 2008) (noting that changes in country conditions do not arise in "cases deal[ing] solely with a static country condition that would now affect the applicant due to a personal

-12-

choice the applicant made while in this country"). We conclude, therefore, that Wang has not demonstrated that had his motions to reopen and reconsider based on changed country conditions been timely they would have been granted.

Even if Wang had overcome the time-bar, he fails to present evidence sufficient to establish that "he would have been entitled to continue residing in the United States" as required to demonstrate prejudice resulting from his ineffective assistance of counsel claim. *Sako*, 434 F.3d at 864. The BIA noted that the evidence that Wang provided is largely uncorroborated and of questionable authenticity. The BIA also noted, in an earlier order questioning the authenticity of the documents submitted in Wang's first motion to reopen that the IJ had made an adverse credibility determination based in part on Wang's submission of false documents in his original visa application. Similarly, in *Zhang v. Mukasey*, 543 F.3d 851, 853, 855 (6th Cir. 2008), we affirmed a BIA decision denying a motion to reopen in part because it had declined to credit evidence regarding a fear of individualized persecution by the petitioner due to the fact that the petitioner had failed to rehabilitate her credibility. Although the BIA did not expressly deny the credibility of the letters Wang provided regarding individualized persecution in China in its December 31, 2008, decision, it is unlikely that they would alter the earlier determination that the evidence presented by Wang in his original motion to reopen was insufficient to demonstrate changed country conditions.

The new evidence provided consists largely of unsupported statements by Wang and several of his friends, poorly translated online content (without the originals attached), an undated CDP membership card, an outdated 2000 Human Rights Watch report, and photographs of Wang in front of a CDP flag and in a street demonstration (first undated, then resubmitted with date stamps). The

credibility of the corroborating letters is particularly questionable. The letters provided by Wang as corroboration were written after the BIA criticized the lack of corroborating evidence from China in his first motion to reopen; the letters were sent together via express mail by his daughter in response to specific requests by Wang for such information; and Wang did not attempt to rehabilitate his credibility after the IJ found him not credible in part due to his use of fraudulent documents. Taken as a whole, the evidence is insufficient in scope and credibility to demonstrate with certainty that had the BIA found that changed country conditions excused the untimely filing and therefore granted the motion to reopen, Wang would have been granted asylum. *See Huicochea-Gomez*, 237 F.3d at 700 ("It is too speculative for the Huicocheas to claim that but for [their attorney's] legal advice, they would not be facing deportation or would have been granted the discretionary relief they are seeking.").

Wang also has not demonstrated that because of the alleged ineffective assistance of counsel, the proceedings were fundamentally unfair. *See Sako*, 434 F.3d at 863-64 (noting that prejudice and fundamental fairness are "analogous" in the context of ineffective assistance of counsel claims in removal proceedings). Thus, "for the same reasons that [Wang] fails to establish prejudice, he also fails to establish fundamental unfairness that would violate due process." *Chang Wen Zhuang v. Holder*, 335 F. App'x 540, 546 (6th Cir. 2009); *see also Ljucovic*, 144 F. App'x at 506.

The BIA thus did not abuse its discretion in so deciding and in denying Wang's December 31, 2008, motion to reopen. We therefore affirm the BIA's order denying the motion.

IV.

Wang also argued in his October 2008 motion to reopen to the BIA, but not explicitly in his *pro se* brief before this court, that he is entitled to equitable tolling of the filing deadlines due to ineffective assistance of counsel. "Equitable tolling may apply when a petitioner has received ineffective assistance of counsel." *Barry v. Mukasey*, 524 F.3d 721, 724 (6th Cir. 2008) (quoting *Ljucovic*, 144 F. App'x at 503) (quotation marks omitted). However, this court noted in *Barry* that "we . . . have declined to equitably toll filing periods based on ineffective assistance of counsel where a petitioner fails to establish prejudice from former counsel's untimely actions." *Id.* at 725 (citing *Ajazi*, 216 F. App'x 515, 518 (6th Cir. 2007)). Because Wang failed to demonstrate prejudice, his claim for equitable tolling likewise fails.

V.

For the foregoing reasons, we affirm the order of the BIA.